IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| Consumers' Research, et al., ) | |
|                       Petitioners, ) | |
| ) | |
| v. ) | No. 22-60008 |
| ) | |
| Federal Communications Commission ) | |
|  and United States of America, ) | |
|                       Respondents. ) | |

**MOTION TO HOLD CASE IN ABEYANCE**

Petitioners in this case challenge the FCC's adoption of a universal service contribution factor for the first quarter of 2022. They maintain that the FCC's universal service rules and procedures for approving the contribution factor are unlawful for a variety of reasons. The Court has set a filing deadline of March 28, 2022 for petitioners' opening brief.

The Commission has not yet addressed petitioners' claims. Pursuant to a Congressional directive, the FCC recently released a Notice of Inquiry seeking comment on the issues that petitioners raised in comments filed with the agency— the same issues that petitioners plan to raise in this case. After the Commission receives and reviews comments on those issues, it intends to release a report addressing them. In view of this development, the Commission and the United States (the respondents in this case) respectfully move for the Court to hold this

case in abeyance, suspending further proceedings until the agency issues its report addressing the claims raised by petitioners.

Before filing this motion, counsel for the FCC informed counsel for the other parties that respondents would be moving to hold the case in abeyance. Petitioners oppose this motion. Intervenors supporting respondents consent to the motion.

## BACKGROUND

The Federal Communications Commission has a statutory mandate to preserve and advance the universal availability of telecommunications service throughout the nation. *See* 47 U.S.C. § 254; *Texas Office of Public Utility Counsel v. FCC*, 183 F.3d 393, 405-08 (5th Cir. 1999). To fulfill this universal service mandate, the Commission established funding mechanisms to subsidize the provision of telecommunications service to low-income individuals, rural health care providers, schools and libraries, and high-cost areas (*i.e.*, remote areas where the cost of providing service is high). *Vt. Pub. Serv. Bd. v. FCC*, 661 F.3d 54, 56-57 (D.C. Cir. 2011). All providers of interstate telecommunications service must make contributions to finance these universal service mechanisms. *See* 47 C.F.R. § 54.706. Telephone companies "may pass these fees along to their customers, and almost always do." *Vt. Pub. Serv. Bd.*, 661 F.3d at 57.

This case concerns a challenge to the FCC's adoption of a universal service contribution factor for the first quarter of 2022. The contribution factor is "the ratio of total projected quarterly expenses of the [FCC's] universal service support mechanisms to the total projected collected end-user interstate and international telecommunications revenues, net of projected contributions." 47 C.F.R. § 54.709(a)(2). This factor is used to calculate the quarterly contributions that telecommunications carriers must make to the FCC's universal service program. "Each telecommunications carrier's quarterly assessment is … determined by applying [the] contribution factor to [the] carrier's end-user revenue." *Rural Cellular Ass'n v. FCC*, 685 F.3d 1083, 1086 (D.C. Cir. 2012).

At least 60 days before each quarter, the Universal Service Administrative Company (USAC), which administers the federal universal service program, provides the FCC and its Managing Director with projections of demand for the universal service mechanisms and administrative expenses for the upcoming quarter. The Commission then issues a public notice announcing USAC's projections and proposing a contribution factor based on those projections. "The Commission reserves the right to set projections of demand and administrative expenses at amounts that the Commission determines will serve the public interest at any time within the fourteen-day period following release of the Commission's public notice." 47 C.F.R. § 54.709(a)(3). However, if the Commission takes "no

action" within 14 days after release of the public notice, USAC's cost projections and the contribution factor proposed in the public notice "shall be deemed approved by the Commission." *Ibid*.

On November 2, 2021, USAC filed with the FCC its projections of demand and administrative expenses for the federal universal service mechanisms for the first quarter of 2022. In response to USAC's submission, petitioners filed comments with the Commission on November 19, 2021. A copy of those comments is attached.

In their November 2021 comments, petitioners made no specific objections to USAC's projections. Instead, they argued that the Commission should set the contribution factor at zero and suspend the collection of universal service contributions because (according to petitioners) the FCC's universal service program is unlawful. Petitioners maintained that section 254 of the Communications Act violates the Constitution by delegating Congress's legislative and taxing power to the FCC, and that the Commission improperly re-delegated this power to USAC. In addition, petitioners contended that the selection of USAC's board of directors by the FCC Chair is unlawful, either because it violates the Constitution's Appointments Clause or because it exceeds the FCC's statutory authority. Petitioners also asserted that the FCC could not lawfully adopt the proposed contribution factor because the agency failed to comply with the

4

rulemaking requirements of the Administrative Procedure Act, 5 U.S.C. § 553, and the publication requirements of the Federal Register Act, 44 U.S.C. § 1505.[1]

On December 13, 2021, the FCC's Office of Managing Director (OMD) issued a public notice announcing a proposed universal service contribution factor of 25.2 percent for the first quarter of 2022. Public Notice, Proposed First Quarter 2022 Universal Service Contribution Factor, DA 21-1550 (OMD Dec. 13, 2021). The proposed contribution factor was based on USAC's projections of demand and administrative expenses for the first quarter of 2022, which were set forth in the public notice. *See id*. at 1-2. The public notice stated: "If the Commission takes no action regarding the projections of demand and administrative expenses and the proposed contribution factor within the 14-day period following release of this Public Notice, they shall be deemed approved by the Commission." *Id*. at 4 (citing 47 C.F.R. § 54.709(a)(3)).

On December 21, 2021, petitioners filed comments with the Commission in response to the public notice. A copy of those comments is attached. In those

---

[1] Many of these petitioners made the same arguments in comments filed with the FCC on September 23, 2021, in response to the Commission's public notice proposing a contribution factor for the fourth quarter of 2021. After that contribution factor took effect, the petitioners that filed those comments petitioned for review of the fourth quarter 2021 contribution factor in the Sixth Circuit. *See Consumers' Research v. FCC*, 6th Cir. No. 21-3886 (filed Sept. 30, 2021). On January 11, 2022, respondents filed a motion to hold that case in abeyance. The Sixth Circuit has not yet ruled on that motion.

comments, petitioners did not question the accuracy of OMD's calculation of the proposed contribution factor based on USAC's projections. They simply reiterated their assertions that the FCC's universal service program was unlawful, and that the Commission should therefore suspend the collection of universal service contributions.

The FCC took no action within 14 days of the release of the public notice proposing a contribution factor for the first quarter of 2022. Accordingly, the proposed contribution factor was "deemed approved by the Commission" and became effective on December 27, 2021. *See* 47 C.F.R. § 54.709(a)(3).

On January 5, 2022, petitioners filed a petition for review in this Court challenging the FCC's approval of the contribution factor for the first quarter of 2022. The petition stated that petitioners plan to raise the same constitutional and statutory arguments set forth in the comments they filed with the Commission on November 19, 2021 and December 21, 2021. Under the briefing schedule established by the Court, petitioners' opening brief is due on March 28, 2022.

The Commission has indicated that it intends to address petitioners' arguments concerning the lawfulness of the universal service program in a proceeding mandated by the Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, 135 Stat. 429 (2021) (Infrastructure Act). Section 60104(b) of the Act directs the FCC to commence a proceeding within 30 days of the Act's enactment

"to evaluate the implications of this Act and the amendments made by the Act on how the Commission should achieve the universal service goals for broadband [*i.e.*, high-speed internet access]." Infrastructure Act, div. F, tit. I, § 60104(b). Section 60104(c) of the Act requires the Commission, within 270 days of the Act's enactment, to "submit to Congress a report on the options of the Commission for improving its effectiveness in achieving the universal service goals for broadband in light of this Act and the amendments made by this Act, and other legislation that addresses those goals." *Id.* § 60104(c).

The Infrastructure Act was enacted on November 15, 2021. In accordance with section 60104(b) of the Act, the FCC on December 15, 2021 issued a notice of inquiry to "commence a proceeding … seeking comment on issues related to the future of the Universal Service Fund … in light of the broadband investments" in the Infrastructure Act. *Report on the Future of the Universal Service Fund*, FCC 21-127, ¶ 1 (released December 15, 2021) (*Notice of Inquiry*). A copy of the *Notice of Inquiry* is attached. Among other things, the *Notice of Inquiry* seeks comment on the issues raised by petitioners' comments with respect to the contribution factors for the fourth quarter of 2021 and the first quarter of 2022. *Id.* ¶ 45. "In particular," the Commission requested comment on petitioners' claims that (1) "section 254 of the Communications Act unconstitutionally delegates Congress's legislative and taxing power to the Commission," (2) "the Commission

7

has violated the Constitution by delegating Congress's legislative and taxing power to USAC," (3) "the appointment of USAC's board of directors by the FCC Chair violates the Constitution's appointments clause or (in the alternative) exceeds the Commission's statutory authority," and (4) "the Commission violated the APA and the Federal Register Act by adopting a new contribution factor for each quarter without conducting a notice-and-comment rulemaking proceeding or publishing the contribution factor in the Federal Register." *Id*. n.124.

## ARGUMENT

Shortly before the contribution factor for the first quarter of 2022 was adopted, petitioners filed comments with the FCC claiming that the entire universal service program was unlawful for a variety of reasons. Petitioners anticipated that the FCC would not be able to issue an order addressing petitioners' wide-ranging arguments before the contribution factor took effect. *See* Petitioners' Comments, November 19, 2021, at 50; Petitioners' Comments, December 21, 2021, at 51-52. The Commission did not. The contribution factor challenged by petitioners was deemed approved on December 27, 2021.

Pursuant to the Infrastructure Act, the FCC recently commenced a proceeding to consider the future of the universal service program. In the *Notice of Inquiry* initiating that proceeding, the Commission specifically solicited comment on the claims raised by petitioners concerning the lawfulness of the program and

the procedures for adopting the quarterly contribution factor. *Notice of Inquiry* ¶ 45 & n.124. After the Commission has an opportunity to review petitioners' assertions and the comments of other interested parties, it intends to address petitioners' arguments in a report to Congress. Under the terms of the Infrastructure Act, that report must be issued by August 12, 2022 (within 270 days of the statute's enactment). Until the report is released, the Court should suspend briefing and hold this case in abeyance.

In light of the *Notice of Inquiry*, it makes little sense to proceed with this litigation now. The Commission has yet to address the arguments petitioners have leveled against the universal service program. Placing this case in abeyance pending the Commission's resolution of the issues discussed in the *Notice of Inquiry* would provide the Commission with that opportunity. In similar circumstances, this Court has held cases in abeyance to afford agencies the opportunity to resolve issues that they had not previously addressed. *See, e.g., Nat'l Parks Conservation Ass'n v. U.S. EPA*, 991 F.3d 681, 683 (5th Cir. 2021) (the Court granted EPA's motion to hold a case in abeyance pending EPA's resolution of a petition for reconsideration of the challenged rule); *City of Arlington v. FCC*, 668 F.3d 229, 236 (5th Cir. 2012) (the Court granted the FCC's motion to hold the case in abeyance pending the FCC's disposition of a petition for

reconsideration of the challenged order), *aff'd*, 569 U.S. 290 (2013). It should take the same approach here.

Under these circumstances, the Court should hold this case in abeyance until the Commission issues its report to Congress as mandated by the Infrastructure Act. The Commission recently requested comment on petitioners' claims in the *Notice of Inquiry* initiating that proceeding. *See Notice of Inquiry* ¶ 45 & n.124. Congress has directed the FCC to issue a report to Congress concluding that proceeding within 270 days of the Infrastructure Act's enactment (*i.e.*, on or before August 12, 2022). Infrastructure Act, div. F, tit. I, § 60104(c). If the Commission were to accept any of petitioners' arguments, the report to Congress could render this case moot. Alternatively, if the Commission rejected some or all of petitioners' claims in the report to Congress, this Court would be able to review the Commission's action on the basis of rationales articulated by the Commission itself.

Accordingly, the Court should suspend briefing and hold this case in abeyance until the FCC issues its report to Congress. This will give the parties an opportunity to address the relevance of any statements in the report regarding petitioners' arguments with respect to the lawfulness of the FCC's rules and procedures for adopting the universal service contribution factor.

Respectfully submitted,

| | |
|---|---|
| Mark B. Stern<br>Gerard Sinzdak<br>Attorneys<br><br>Appellate Staff<br>Civil Division, Room 7242<br>U.S. Department of Justice<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br>(202) 514-0718 | P. Michelle Ellison<br>General Counsel<br><br>Jacob M. Lewis<br>Acting Deputy General Counsel<br><br>/s/ James M. Carr<br><br>James M. Carr<br>Counsel<br><br>Federal Communications Commission<br>Washington, DC 20554<br>(202) 418-1740 |

February 23, 2022

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>2,187</u> words, *or*

    ☐ this document uses a monospaced typeface and contains <u> </u> lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using <u>                          </u> with <u>              </u>.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

## CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on February 23, 2022, I filed the foregoing Motion to Hold Case in Abeyance with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740