No. 22-60008

---

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

CONSUMERS' RESEARCH; CAUSE BASED COMMERCE, INCORPORATED; KERSTEN CONWAY; SUZANNE BETTAC; ROBERT KULL; KWANG JA KERBY; TOM KIRBY; JOSEPH BAYLY; JEREMY ROTH; DEANNA ROTH; LYNN GIBBS; PAUL GIBBS; RHONDA THOMAS,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,
*Respondents*.

---

On petition for review of an agency order

---

# BRIEF OF AMICI CURIAE COMPETITIVE ENTERPRISE INSTITUTE, FREE STATE FOUNDATION, CHRISTOPHER DEMUTH, HAROLD FURCHTGOTT-ROTH, MICHAEL S. GREVE, AND RANDOLPH J. MAY IN SUPPORT OF PETITION FOR REHEARING EN BANC

---

Jeffrey S. Beelaert
*Counsel of Record*
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street NW
Washington, D.C. 20005
(202) 737-7777
jbeelaert@steinmitchell.com

---

## CERTIFICATE OF INTERESTED PARTIES

(1) *Consumers' Research v. FCC*, Fifth Circuit Case No. 22-60008

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>Petitioners</u>

Consumers' Research

Caused Based Commerce

Kersten Conway

Suzanne Bettac

Robert Kull

Kwang Ja Kirby

Tom Kirby

Joseph Bayly

Jeremy Roth

Deanna Roth

Lynn Gibbs

Paul Gibbs

Rhonda Thomas

<u>Respondents</u>

Federal Communications Commission

United States of America

Intervenors

Benton Institute for Broadband & Society

National Digital Inclusion Alliance

Center for Media Justice (d/b/a MediaJustice)

Schools, Health & Libraries Broadband Coalition

National Telecommunications Cooperative Association (d/b/a NTCA – The Rural Broadband Association)

Competitive Carriers Association

Amici Curiae

Competitive Enterprise Institute

Free State Foundation

Christopher DeMuth

Harold Furchtgott-Roth

Michael S. Greve

Randolph J. May

Attorneys for Petitioners

C. Boyden Gray

R. Trent McCotter

Jonathan Berry

Michael Buschbacher

Jared M. Kelson

Boyden Gray & Associates PLLC

Attorneys for Respondents

James M. Carr

Jacob M. Lewis

Adam Crews

P. Michelle Ellison

Gerard J. Sinzdak

Merrick Garland

Attorneys for Intervenors

Andrew Jay Schwartzman

Michael D. Miller

Jason Neal

Stephanie Weiner

Harris, Wiltshire & Grannis, LLP

Attorney for Amici Curiae

Jeffrey S. Beelaert

Stein Mitchell Beato Missner LLP

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert
Counsel of Record for Amici Curiae

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES .......... i

TABLE OF CONTENTS .......... iv

TABLE OF AUTHORITIES .......... v

INTEREST OF AMICI CURIAE .......... 1

INTRODUCTION .......... 3

SUMMARY OF ARGUMENT .......... 4

ARGUMENT .......... 5

I. Congress impermissibly delegated legislative power to the FCC under 47 U.S.C. § 254. .......... 5

II. The FCC cannot hand off regulatory power to the Universal Service Administrative Company. .......... 9

CONCLUSION .......... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) ........ 4, 12

*Bond v. United States,*
564 U.S. 211 (2011) ........ 9

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936) ........ 12

*Dep't of Transp. v. Ass'n of Am. Railroads*,
575 U.S. 43 (2015) ........ 6, 10, 12

*In re Incomnet, Inc.*,
463 F.3d 1064 (9th Cir. 2006) ........ 10, 11

*Marshall Field & Co. v. Clark,*
143 U.S. 649 (1892) ........ 5

*Mistretta v. United States*,
488 U.S. 361 (1989) ........ 8

*Nat'l Cable Television Ass'n, Inc. v. United States*,
415 U.S. 336 (1974) ........ 5, 7

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) ........ 6

*Texas v. Texas v. Comm'r of Internal Revenue*,
142 S. Ct. 1308 (2022) ........ 10

*Texas Off. of Pub. Util. Counsel v. FCC*,
265 F.3d 313 (5th Cir. 2001) ........ 3

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*,
5 F.4th 666 (6th Cir. 2021) ........ 6

*United States ex rel. Shupe v. Cisco Sys., Inc.*,
759 F.3d 379 (5th Cir. 2014) .......... 4

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) .......... 6

**Constitution and Statutes**

U.S. Const. art. I .......... 6

Telecommunications Act of 1996
47 U.S.C. § 254 .......... *passim*

**Regulations and Rules**

47 C.F.R. § 54.701 .......... 5, 10

47 C.F.R. § 54.709 .......... 7, 10

47 C.F.R. § 54.715 .......... 10

**Other Authorities**

Amy Coney Barrett, *Suspension and Delegation*,
99 Cornell L. Rev. 251 (2014) .......... 17

Barbara A. Cherry & Donald D. Nystrom, *Universal Service Contributions: An Unconstitutional Delegation of Taxing Power*,
2000 L. Rev. Mich. St. U. Det. C.L. 107 .......... 18

Christopher C. DeMuth & Michael S. Greve, *Agency Finance in the Age of Executive Government*,
24 Geo. Mason L. Rev. 555 (2017) .......... 7

The Federalist, No. 85 (James Madison) .......... 5

## INTEREST OF AMICI CURIAE[1]

The **Competitive Enterprise Institute** is a nonprofit organization headquartered in Washington, D.C., dedicated to promoting the principles of free markets and limited government. Since its founding in 1984, the institute has focused on raising public understanding of the problems of overregulation. It has done so through policy analysis, commentary, and litigation.

The **Free State Foundation** is a nonprofit, nonpartisan think tank. Its purpose is to promote, through research and educational activities, understanding of free markets, free speech, limited government, and rule of law principles at the federal level and in Maryland, and to advocate laws and policies true to these principles.

**Christopher DeMuth** is a distinguished fellow at the Hudson Institute, an organization dedicated to the nonpartisan analysis of economic, security, and political issues. Mr. DeMuth previously served as president of the American Enterprise Institute for Public Policy from 1986 to 2008. He frequently speaks and writes about government regulation, government policies, and legal controversies.

**Harold Furchtgott-Roth** is a senior fellow and director of the Center for the Economics of the Internet at Hudson Institute. He

[1] This brief is submitted under Federal Rule of Appellate Procedure 29(b)(3). Undersigned counsel certifies that this brief was not authored in whole or in part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than amici and their counsel have contributed to this brief.

frequently comments on issues related to the communications sector of the economy. From 1997 through 2001, Mr. Furchtgott-Roth served as a commissioner of the Federal Communications Commission.

Professor **Michael S. Greve** teaches administrative law at the Antonin Scalia Law School, George Mason University. Professor Greve also specializes in constitutional law, courts, and business regulation. A prolific writer, Professor Greve has authored nine books and a multitude of articles appearing in scholarly publications, as well as numerous editorials, short articles, and book reviews.

**Randolph J. May** is the Founder and President of The Free State Foundation. He is a past Chair of the American Bar Association's Section of Administrative Law and Regulatory Practice, a Fellow of the National Academy of Public Administration, and has served as a Public Member of the Administrative Conference of the United States, where he currently is a Senior Fellow. Mr. May has published more than two hundred articles and essays on communications, administrative, and constitutional law topics.

## INTRODUCTION

Only Congress has the power to lay and to collect taxes for the general welfare of all Americans. Regardless of the public policy that it seeks to advance, Congress cannot delegate this power to the FCC or to any other executive branch agency.

The Constitution does not permit Congress to circumvent the legislative process by allowing an independent agency (guided by a private company owned by an industry trade group) to raise and to spend however much money it wants every quarter for "universal" telecommunications service at the expense of every American who pays a monthly phone bill.

In this case, however, the panel concluded "that Congress supplied the FCC with intelligible principles when it" delegated authority to the Commission to raise and to spend however much money it wants every quarter on universal service programs. Op. at 9. The panel's conclusion cannot be squared with the aspirational "lofty and expansive language" that Congress used "to delegate difficult policy choices to the Commission's discretion" under 47 U.S.C. § 254. *Texas Off. of Pub. Util. Counsel v. FCC*, 265 F.3d 313, 321 (5th Cir. 2001) (internal quotation marks omitted). The panel erred in concluding that Congress can confer the FCC with the authority to do whatever the agency wants with taxes collected from nearly all Americans by claiming to satisfy vague "principles" that the FCC itself can *redefine* however it sees fit according

to its own notions of "public interest, convenience, and necessity." 47 U.S.C. § 254(b)(7).

No court should condone the grant of such "unfettered power" to an administrative agency to tax and to spend "with no limits." Barbara A. Cherry & Donald D. Nystrom, *Universal Service Contributions: An Unconstitutional Delegation of Taxing Power*, 2000 L. Rev. Mich. St. U. Det. C.L. 107, 110. Nor should a court allow the FCC to hand off regulatory authority to "a private corporation" to administer such a massive government-subsidy program. *United States ex rel. Shupe v. Cisco Sys., Inc.*, 759 F.3d 379, 387 (5th Cir. 2014). That "is delegation running riot." *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 553 (1935) (Cardozo, J., concurring).

En banc rehearing is warranted.

## SUMMARY OF ARGUMENT

This Court should grant the petition for rehearing en banc for at least two reasons:

I. The authority to decide taxing and spending policies—especially picking winners and losers involving billions of dollars in government subsidies—cannot be delegated. Only elected members of Congress, representing the will of the people, may decide these issues. The Commission's regulatory scheme under 47 U.S.C. § 254 for exacting revenue for government subsidies doled out by the Universal Service

Administrative Company operates as an unconstitutional delegation of legislative authority.

II. Even if this Court were to agree with the panel that the FCC lawfully could raise taxes on its own, the agency's appointment of the Universal Service Administrative Company as "the permanent Administrator" of the universal service program, 47 C.F.R. § 54.701(a), cannot stand absent clear congressional authorization.

## ARGUMENT

### I. Congress impermissibly delegated legislative power to the FCC under 47 U.S.C. § 254.

In drafting and ratifying our Constitution, the people gave each branch of the federal government its own role with certain enumerated powers. That Congress cannot delegate its legislative power "is a principle universally recognized as vital to the integrity and maintenance of the system of government ordained by the Constitution." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892). To be sure, the power of the purse may be "the most complete and effectual weapon with which any constitution can arm the immediate representatives of the people." The Federalist, No. 58 (James Madison).

"Taxation is a legislative function," and Congress "is the sole organ for levying taxes." *Nat'l Cable Television Ass'n, Inc. v. United States*, 415 U.S. 336, 340 (1974). Article I of the Constitution vests all legislative powers—including the power "to lay and collect Taxes, Duties, Imposes,

and Excises"—"in a Congress of the United States" and nowhere else. U.S. Const. art. I, § 8, cl. 1. The text of Article I "permits no delegation of those powers." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

By careful design, our Constitution "prescribes a process for making law, and within that process there are many accountability checkpoints." *Dep't of Transp. v. Ass'n of Am. Railroads*, 575 U.S. 43, 61 (2015) (Alito, J., concurring). "It would dash the whole scheme if Congress could give its power away to an entity that is not constrained by those checkpoints." *Id.* As a democratically accountable institution, Congress embodies the will of the people. Yet the statutory scheme for the universal service fund flouts these principles. Shifting the responsibility to levy taxes to "a less accountable branch" may insulate Congress from political accountability, but that "deprives the people of the say the framers intended them to have." *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666, 673 (6th Cir. 2021) (Thapar, J., concurring).

Congress cannot change the nature of a tax "for *constitutional* purposes" simply by using an innocuous euphemism when describing the exaction in statutory text. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). So, although Congress may prefer to enact a statute that mandates "an equitable and nondiscriminatory *contribution*" as a means of supporting vaguely defined "universal service support mechanisms" under 47 U.S.C. § 254, that label is not dispositive.

The statutory contribution functions as a tax with "no relation to any benefit conferred by the FCC." Christopher C. DeMuth & Michael S. Greve, *Agency Finance in the Age of Executive Government*, 24 Geo. Mason L. Rev. 555, 566 (2017). In fact, the size of the quarterly contribution "is based on the agency's self-determined funding needs for its subsidy schemes." *Id.* And those funding needs in reality get defined by the Universal Service Administrative Company, *see* 47 C.F.R. § 54.709, which is run "by interest groups that are interested in and affected by universal service programs," USAC.org, *Leadership*.[2]

Congress cannot delegate to the Commission the power to levy taxes broadly designed to benefit consumers "in all regions of the Nation." 47 U.S.C. §§ 254(b)(2). And Congress certainly cannot delegate to the Commission the power to establish *on its own* (working with the federal-state board) what amounts to "necessary and appropriate" spending policies "for the protection of the public interest, convenience, and necessity." *Id.* § 254(b)(7). "Taxation is a legislative function," and only Congress may levy taxes. *National Cable*, 415 U.S. at 340.

This Court should reject the panel's interpretation of Section 254 because it gives a blank check to the FCC for whatever "universal service" programs the agency desires to fund. Under the panel's flawed decision, the Commission could make the tax exceptionally large one quarter and then infinitesimally small the very next quarter without any

[2] https://www.usac.org/about/leadership/

congressional approval and without any consideration of the benefit or harm that it inflicts on the service providers (i.e., American public) who actually pay the "contribution." There is indeed no limiting principle to the FCC's interpretation of the statute. Nor did the panel identify one. Under the Commission's current practice, the agency hypothetically could expand the service provider tax base to include providers of internet service or other technology companies to raise hundreds of billions of dollars if it wanted.

Congress of course may delegate some authority to the FCC by setting general standards meant to guide the agency's actions. In doing so, however, Congress must articulate "an intelligible principle" that clearly delineates the scope of agency's authority. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). That test may seem "notoriously lax," Amy Coney Barrett, *Suspension and Delegation*, 99 Cornell L. Rev. 251, 318 (2014), but this case does not even involve an agency applying its expertise to fill in the technical details in accord with intelligible statutory principles. Section 254 leaves *everything* up to the Commission in executing the universal service program.

Even if this Court were to accept the panel's interpretation of Section 254 as articulating a "general policy" in favor of universal service, Congress provided no "boundaries" to the authority that it delegated. *American Power & Light Co. v. SEC*, 329 U. S. 90, 105 (1946). Statutory boundaries are important—they respect the separation of powers.

Decades ago, Congress enacted a statute that directed the Secretary of Transportation to establish a schedule of annual fees for safety "based on the usage, in reasonable relationship to volume-miles, miles, revenues, or an appropriate combination thereof, of natural gas and hazardous liquid pipelines." *Skinner v. Mid-America Pipeline Co.*, 490 U.S. 212, 214 (1989) (quoting Section 7005(a)(1) of the Consolidated Omnibus Budget Reconciliation Act of 1985). Because Congress placed "multiple restrictions" on the Secretary's authority to impose those fees, the Supreme Court held that the statute satisfied the "requirements of the nondelegation doctrine." *Id.* at 220.

Unlike the FCC in this case, the Secretary in *Skinner* had "*no discretion whatsoever* to expand the budget" for administering the relevant safety program. *Id.* (emphasis added). The panel decision conflicts with *Skinner*.

## II. The FCC cannot hand off regulatory power to the Universal Service Administrative Company.

"The structural principles secured by the separation of powers" protect each branch of government from incursion by the others. *Bond v. United States*, 564 U.S. 211, 222 (2011). Just as Congress cannot delegate legislative power to an executive branch agency, the FCC likewise cannot hand off "regulatory power to a private entity." *Ass'n of Am. Railroads*, 575 U.S. at 62 (Alito, J., concurring).

The FCC's appointment of the Universal Service Administrative Company as "the permanent Administrator" of the universal service program, 47 C.F.R. § 54.701(a), raises a serious separation-of-powers issue, *see, e.g.*, *Texas v. Texas v. Comm'r of Internal Revenue*, 142 S. Ct. 1308, 1309 (Mar. 28, 2022) (statement of Alito, J.). "To ensure the Government remains accountable to the public, it cannot delegate regulatory authority to a private entity." *Id.* (internal quotation marks omitted). Here, however, that is exactly what the panel has allowed.

Each quarter, the Universal Service Administrative Company submits a budget to the FCC for various "universal service support mechanisms." 47 C.F.R. § 54.709. "While the FCC has substantial authority to determine" the Company's budget and to approve its disbursements, the Ninth Circuit has concluded that Company does not simply administer the Universal Service Fund "as the FCC's agent." *In re Incomnet, Inc.*, 463 F.3d 1064, 1074 (9th Cir. 2006).

"The FCC only exercises power over the fund indirectly, essentially by overseeing USAC." *Id.* (citing 47 C.F.R. § 54.715(c)). The Commission posts the numbers on its website and then, *through agency inaction*, the budget—including the "contribution factor" (which really acts as a tax)—is "deemed approved by the Commission." 47 C.F.R. § 54.709(a)(3).

This Court should not allow the FCC to hand off regulatory authority to a private corporation to administer this massive government-subsidy program, even if the Commission exercises indirect

control. The Company now rakes in nearly $10 billion each year in "contributions" (ultimately borne by consumers), which it then disburses however it wants. Indeed, "neither the specific recipients nor the specific beneficiaries are named in that statute." *Incomnet*, 463 F.3d at 1075. The Company "sets its own budget and, subject to FCC approval, it has *wide discretion*" to decide "if, when, and how it disburses funds." *Id.* at 1076 (emphasis added).

Congress provided no direction as to how either the FCC or the Universal Service Administrative Company should calculate rates for service providers. There is no statutory guidance as to what qualifies as an "equitable and nondiscriminatory" contribution, 47 U.S.C. § 254(d), and no statutory "ceiling" for the amount of fees that the Commission may collect or for the subsidies that it may distribute in any fiscal year, *Skinner*, 490 U.S. at 220. Nor did Congress provide any guidance as to how either the FCC or the Universal Service Administrative Company should spend the contributions that they collect to "advance universal service" at libraries, schools, in rural areas, and in high-cost areas. *Id.*

To the extent that the panel read Section 254 to permit the Commission to rely on a private company to administer the universal service program, that "is delegation running riot." *Schechter Poultry*, 295 U.S. at 553 (Cardozo, J., concurring).

Delegation to a private entity "is not even delegation to an official or an official body, presumptively disinterested, but to private persons

whose interests may be and often are adverse to the interests of others in the same business." *Carter v. Carter Coal Co.*, 298 U.S. 238, 311 (1936). In such cases, "there is not even a fig leaf of constitutional justification." *Ass'n of Am. Railroads*, 575 U.S. at 62 (Alito, J., concurring). "Private entities are not vested with 'legislative Powers.' Nor are they vested with the 'executive Power,' which belongs to the President." *Id.* (citations omitted).

Deciding how best to raise and to spend billions of dollars each year—including whether to connect telecommunications services to high-cost residences, schools, libraries, or rural medical facilities—encompasses precisely the hard choices that must be made by the elected representatives of the people, not a private company controlled by interested parties.

## CONCLUSION

This Court should grant the petition for rehearing en banc.

Respectfully submitted,

*/s/ Jeffrey S. Beelaert*
Jeffrey S. Beelaert
*Counsel of Record*
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street NW
Washington, D.C. 20005
(202) 737-7777
jbeelaert@steinmitchell.com

April 27, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,598 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, font size 14.

*/s/ Jeffrey S. Beelaert*

## CERTIFICATE OF SERVICE

I certify that, on April 27, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Jeffrey S. Beelaert*