IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Consumers' Research, et al., )
                      Petitioners, )
                                 )
              v. )     No. 22-60008
                                 )
Federal Communications Commission )
  and United States of America, )
                      Respondents. )

**OPPOSITION OF RESPONDENTS
TO PETITION FOR REHEARING EN BANC**

Rehearing is unwarranted.  The panel (Richman, C.J., Stewart, Haynes, JJ.) correctly applied settled law in unanimously rejecting petitioners' nondelegation and private delegation challenges to the Federal Communications Commission's longstanding program—on which millions of Americans rely—to carry out Congress's goal to provide universal telecommunications service to "all the people of the United States."  47 U.S.C § 151.  The Sixth Circuit recently rejected identical claims.  *Consumers' Rsch. v. FCC*, 2023 WL 3244274 (6th Cir. May 4, 2023).

As the panel explained, petitioners' nondelegation challenge fails because section 254 of the Communications Act, 47 U.S.C. § 254, provides "ample direction" to the FCC in administering the program, slip op. 8, including specific "limitations on the FCC's revenue-raising ability," slip op. 10-11.  This is all that

the Constitution requires. *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality); *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 441-43 (5th Cir. 2020).

Petitioners' private subdelegation challenge likewise fails because the Universal Service Administrative Company ("USAC"), which "aid[s]" in the FCC's "administration" of the program, slip op. 2, is wholly "subordinate[d]" to the agency's pervasive oversight, slip op. 14. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940); *State of Tex. v. Rettig*, 987 F.3d 518, 532 (5th Cir. 2021).

The petition for rehearing should be denied.

## BACKGROUND

1. "Universal service"—the availability of affordable, reliable telecommunications service nationwide—"has been a fundamental goal of federal telecommunications regulation since the passage of the Communications Act of 1934." *Alenco Commc'ns, Inc. v. FCC*, 201 F.3d 608, 614 (5th Cir. 2000).

Section 254 of the Communications Act, enacted in 1996, provides that the FCC must "base policies for the preservation and advancement of universal service" on a number of principles specified by Congress, 47 U.S.C. § 254(b)(1)-(7), including the establishment of "specific, predictable, and sufficient" mechanisms "to preserve and advance universal service." *Texas Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 406 (5th Cir. 1999) (*TOPUC I*) (quoting 47

U.S.C. § 254(b)(5)).  The statute also requires "[e]very telecommunications carrier that provides interstate telecommunications service" to contribute to these universal service support mechanisms "on an equitable and nondiscriminatory basis."  47 U.S.C. § 254(d).

To implement section 254, the FCC has created four universal service programs to subsidize service to (1) high-cost areas (remote areas where the cost of providing service is high), 47 C.F.R. §§ 54.302-54.321, 54.801-54.1515; (2) low-income consumers, *id*. §§ 54.400-54.423; (3) schools and libraries, *id*. §§ 54.500-54.523; and (4) rural health care providers, *id*. §§ 54.600-54.633.  American consumers have relied on these programs for decades to bring telecommunications services to underserved and low-income communities, as well as to make such services available to support schools, libraries, and rural health care.  *See* Joint Brief of Intervenors Schools, Health & Libraries Broadband Coalition et al. at 26-38.

2.  The FCC has designated the Universal Service Administrative Company (USAC), a not-for-profit private corporation, as the administrator of the universal service programs.  *Changes to the Board of Directors of the National Exchange Carrier Association, Inc.*, 13 FCC Rcd 25058, 25059-61, 25069-70 ¶¶2, 5, 20 (1998) (*USAC Order*); *see* https://www.usac.org/about/ (describing USAC).

USAC's role is "exclusively administrative." *USAC Order*, 13 FCC Rcd at

25067 ¶16.  It is "responsible for billing contributors, collecting contributions to

the universal service support mechanisms, and disbursing universal service support

funds."  47 C.F.R. § 54.702(b).  USAC "may not make policy, interpret unclear

provisions of the statute or rules, or interpret the intent of Congress.  Where the Act

or the Commission's rules are unclear, or do not address a particular situation,"

USAC must "seek guidance from the Commission."  *Id*. § 54.702(c).

3.  In accordance with 47 U.S.C. § 254(d), FCC rules require all

"telecommunications carriers providing interstate telecommunications services" to

"contribute to the universal service support mechanisms."  47 C.F.R. § 54.706(a).

Carriers may recover these contributions "through interstate telecommunications-

related charges to end users."  *Id*. § 54.712(a).

Each carrier's quarterly universal service contribution is calculated in the

following manner.  At least 60 days before each quarter, USAC must submit to the

FCC its "projections of demand" and "administrative expenses" for the universal

service mechanisms for the upcoming quarter "and the basis for those projections."

*Id*. § 54.709(a)(3).  At least 30 days before the quarter, USAC must submit to the

FCC "the total contribution base" (the projected collected interstate and

international end-user telecommunications revenues for all carriers).  *Id*.  After

receiving USAC's submissions, the FCC announces USAC's projections and

proposes a "contribution factor" for the next quarter "in a public notice …
available on the Commission's website." *Id*.  The "contribution factor" is "based
on the ratio of total projected quarterly expenses of the universal service support
mechanisms to the total projected collected end-user interstate and international
telecommunications revenues, net of projected contributions." *Id*. § 54.709(a)(2).

At any point "within the fourteen-day period following release of the
Commission's public notice," the FCC may revise USAC's projections and set
them "at amounts that the Commission determines will serve the public interest."
*Id.* § 54.709(a)(3).  "If the Commission takes no action" during that period,
USAC's projections and the proposed contribution factor are "deemed approved by
the Commission." *Id*.

4.  On December 13, 2021, the FCC's Office of Managing Director issued a
public notice proposing a contribution factor of 25.2 percent for the first quarter of
2022.  Public Notice, Proposed First Quarter 2022 Universal Service Contribution
Factor, DA 21-1550 (OMD Dec. 13, 2021) (JA100).  The proposed contribution
factor was based on USAC's cost and revenue projections for that quarter, which
were set forth in the public notice. *See id*. at 1-2 (JA100-01).  The FCC took no
action within 14 days after the public notice was released.  Accordingly, on

December 27, 2021, the proposed contribution factor of 25.2 percent was "deemed approved by the Commission."  *See* 47 C.F.R. § 54.709(a)(3).[1]

Petitioners—a telephone service provider and several telephone service subscribers—petitioned the Court to review the first quarter 2022 contribution factor.  They maintained that the contribution factor was unlawful for two reasons.  First, petitioners argued that section 254 unconstitutionally delegated legislative power to the FCC.  Second, petitioners contended that the FCC unlawfully subdelegated its regulatory authority under section 254 to a private entity, USAC.

5.  The panel unanimously rejected both of petitioners' claims.

a.  First, the panel ruled that section 254's delegation of authority to the FCC "does not violate the nondelegation doctrine."  Slip op. 12.  The panel noted that under controlling Supreme Court precedent, a statutory delegation of authority to an executive agency is constitutional if Congress provides "an intelligible principle which adequately guides" the agency.  Slip op. 6 (citing *Gundy*, 139 S. Ct. at 2123 (plurality)).  The "intelligible principle standard is 'not demanding.'"  *Id.* (quoting *Gundy*, 139 S. Ct. at 2129 (plurality)).  The Supreme Court has not found a

---

[1] Although petitioners complain that the contribution factor has "skyrocketed" (Pet. 3), "[t]he contribution burden on households" remained "stable" over the past decade. *Report on the Future of the Universal Service Fund*, FCC 22-67, ¶91, 2022 WL 3500217 (released Aug. 15, 2022); *see id*., Table 2.  Recent "increases" in the contribution factor "are due" primarily "to a decline" in "reported revenues from interstate telecommunications services" (the revenues on which contributions are based).  *Id.* ¶91.

delegation unconstitutional in nearly 90 years, and on the two occasions when the

Court struck down a delegation for failing to provide an intelligible principle, *see*

*Panama Refining Co. v. Ryan*, 293 U.S. 388, 405-06 (1935)*; A.L.A. Schechter*

*Poultry Corp. v. United States*, 295 U.S. 495, 542 (1935), "Congress offered *no*

*guidance* whatsoever" to the agency. *Jarkesy v. SEC*, 34 F.4th 446, 462 (5th Cir.

2022); *Big Time Vapes*, 963 F.3d at 442-43; slip op. 7-8.

Here, the panel found, section 254 provides "ample direction for the FCC."

Slip op. 8. As it explained, section 254 "expressly requires the FCC to ensure" that

telecommunications services are "(1) of decent quality and reasonably priced; (2)

equally available in rural and urban areas; (3) supported by state and federal

mechanisms; (4) funded in an equitable and nondiscriminatory manner; (5)

established in important public spaces (schools, healthcare providers, and

libraries); and (6) available broadly across all regions in the nation." *Id.* (citing 47

U.S.C. § 254(b)(1)-(7)).

Rejecting petitioners' assertion that section 254 "fails to limit or control the

FCC's ability to raise revenue" for its universal service program, the panel pointed

to specific "limitations on the FCC's revenue-raising ability," which permit the

FCC "only" to "raise enough revenue to satisfy its primary function" of preserving

and advancing universal service. Slip op. 10. As the panel recognized (slip op.

11), supported telecommunications services must be (1) "essential to education,

public health, or public safety," (2) "deployed in public telecommunications networks by telecommunications carriers," and (3) "consistent with the public interest, convenience, and necessity." 47 U.S.C. § 254(c)(1)(A)-(D). Moreover, the mechanisms the FCC establishes to support universal service must be "specific, predictable and sufficient" for that purpose. Slip op. 11 (quoting 47 U.S.C. § 254(b)(5)). In addition, distribution of universal service funds is limited "to eligible [telecommunications] carriers under § 214(e)," and "those carriers may only receive support 'sufficient to achieve the purposes of' § 254." *Id*. (quoting 47 U.S.C. § 254(e)). "Taken together," the panel concluded, "these provisions demonstrate that the FCC is not in the dark as to the amount of funding it should seek each quarter." *Id*. On the contrary, "[section] 254 sets out the FCC's obligations with respect to administration of" the universal service program. *Id*. "[T]he FCC, in turn, calculates what funds are necessary to satisfy its obligations." *Id*.

b. Second, the panel held that the FCC's relationship with USAC does not violate "the private nondelegation doctrine" because USAC is entirely "subordinate[d]" to FCC oversight. Slip op. 14. As the panel explained, it is settled that "agencies 'may subdelegate to private entities so long as the entities function subordinately to the federal agency and the federal agency has authority

and surveillance over their activities.'"  Slip op. 12 (quoting *Rettig*, 987 F.3d at

532, and *Sunshine Anthracite Coal*, 310 U.S. at 399).

Here, the panel explained, USAC "may not make policy, interpret unclear

provisions of the statute or rules, or interpret the intent of Congress."  Slip op. 14

(quoting 47 C.F.R. § 54.702(c)).[2]  Moreover,  any proposals that USAC makes to

the FCC "are not binding on carriers until the FCC approves them."  *Id*. (citing 47

C.F.R. § 54.709(a)).  Carriers may appeal USAC decisions "directly to" the

Commission, which "often grants relief" to those carriers.  *Id*.; *see id*. n.7 (citing

examples of successful administrative appeals).  And the FCC "dictates how

USAC calculates the USF contribution factor and subsequently reviews the

calculation method after USAC makes a proposal."  Slip op. 14 (citing 47 C.F.R.

§ 54.709(a)(2)-(3)).  Ultimately, the panel found, the FCC only uses USAC's

projections to calculate the quarterly contribution factor "after independent

consideration of the collected data and other relevant information."  *Id*.

---

[2] The panel erred in describing this regulatory restriction as arising from "federal
statutory law," slip op. 14, but that is of no moment.  The panel correctly
understood that the restriction was imposed by 47 C.F.R. § 54.702, and that rule,
although adopted by the FCC rather than enacted by Congress, equally constrains
USAC's authority.

# **ARGUMENT**

The panel correctly applied Supreme Court and Fifth Circuit precedent in rejecting petitioners' nondelegation and private delegation claims. Rehearing is unwarranted.

## I.    CONGRESS HAS NOT UNCONSTITUTIONALLY DELEGATED LEGISLATIVE POWER TO THE FCC.

The panel properly rejected petitioners' claim that Congress has unconstitutionally delegated legislative power to the FCC.

It has long been settled that Congress may authorize an agency to act to effectuate its goals so long as it "lay[s] down by legislative act an intelligible principle" to which the agency "is directed to conform." *J.W. Hampton, Jr. v. United States*, 276 U.S. 394, 409 (1928). That test is "not demanding." *Gundy*, 139 S. Ct. at 2129 (plurality); *Big Time Vapes*, 963 F.3d at 442. It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

The panel correctly concluded that in section 254 "Congress provided ample direction for the FCC" in carrying out the universal service program, slip op. 8 (citing 47 U.S.C. § 254(b)(1)-(7)), and "placed identifiable limits on what [universal service] distributions can fund," slip op. 11 (citing 47 U.S.C. § 254(b)-(e)); *see also* 47 U.S.C. § 254(h); *Consumers' Rsch.*, 2023 WL 3244274; *Rural*

*Cellular Ass'n v. FCC*, 685 F.3d 1083, 1091 (D.C. Cir. 2012) (section 254 "clearly provides an intelligible principle to guide the Commission's efforts" in collecting universal service contributions, "viz., 'to preserve and advance universal service'"). The Constitution requires nothing more.[3]

Petitioners mistakenly claim that *en banc* review is warranted because of "the 'unique' nature" of the universal service funding mechanism. Pet. 7. The purported uniqueness of the universal service program Congress adopted has no bearing on petitioners' nondelegation claim. The Constitution permits Congress to delegate power to agencies to implement its chosen legislative solutions, so long as it provides the agency with sufficient guidance to carry out those legislative choices. That requirement is readily satisfied here. Moreover, as explained below, the allegedly unique features of the universal service program identified by petitioners do not distinguish that program from others that this Court and the Supreme Court have found to be valid delegations of authority by Congress.

As a threshold matter, relying on *Nat'l Cable Television Ass'n v. United States*, 415 U.S. 336 (1974) (*NCTA*), petitioners wrongly claim that "statutes that

---

[3] Petitioners claim that the panel "watered down" the intelligible principle standard by holding that standard violated only where Congress has provided "no guidance whatever" to an agency. Pet. v-vi (quoting slip op. 7-8). But the panel simply observed the complete absence of legislative guidance had been the hallmark of the few instances in which courts have struck down statutes on nondelegation grounds. Slip op. 8. By contrast, the panel found, Congress provided "ample direction" to the FCC here. Slip op. 9.

delegate revenue-raising authority" are subject to heightened scrutiny.  Pet. 8.
*NCTA*, however, involved a claim that a regulatory fee was inconsistent with the
governing statutory standard; the Court did "not reach" any nondelegation issue.
*NCTA*, 415 U.S. at 342.  The Court subsequently held that "the delegation of
discretionary authority under Congress' taxing power is subject to no constitutional
scrutiny greater than that … applied to other nondelegation challenges." *Skinner v.
Mid-America Pipeline Co.*, 490 U.S. 212, 223 (1989).  Given *Skinner*, there was no
basis for the panel to apply heightened scrutiny to section 254.[4]

In a similar vein, petitioners contend that revenue-raising delegations have
been upheld "only when there was some form of objective [*i.e.*, mathematical]
limit" on "how much money the agency could raise."  Pet. 9.  But in *Whitman v.
American Trucking Associations*, 531 U.S. 457, 475 (2001), Justice Scalia
observed that in reviewing delegations of authority to federal agencies, the
Supreme Court has "never demanded … that statutes provide a 'determinate
criterion' for saying 'how much … is too much.'"  In particular, "the statute at
issue in" *Lichter v. United States*, 334 U.S. 742 (1948), "authorized agencies to

---

[4] Petitioners' contention that universal service contributions are "taxes" (Pet. 12-13) has been rejected by this Court and the D.C. Circuit.  *TOPUC I*, 183 F.3d at 427 n.52; *Rural Cellular Ass'n*, 685 F.3d at 1090-91.  In any event, under *Skinner*, it makes no difference how such contributions are characterized; the nondelegation standard is the same.

recoup 'excess profits' paid under wartime Government contracts, yet [the Court] did not insist that Congress specify how much profit was too much." *Whitman*, 531 U.S. at 475; *see Lichter,* 334 U.S. at 783-86.  Similarly, the Court held that the Secretary of Agriculture did not exercise "legislative power" when he used delegated authority to assess fees on users of forest reserves to protect federal forest lands, even though Congress set no numerical limit on such fees. *United States v. Grimaud*, 220 U.S. 506, 521-23 (1911).  As *Lichter* and *Grimaud* make clear, a statute delegating revenue-raising authority need not contain a quantitative limit on the amount of revenue to be raised in order to withstand constitutional scrutiny.[5]

Petitioners assert that the absence of a numerical cap in section 254 will permit the FCC to raise as much revenue as it pleases.  Pet. v.  Not so.  As the panel recognized, section 254 places "limitations on the FCC's revenue-raising ability," requiring "that the FCC only raise enough revenue to satisfy [the statute's] primary function":  preserving and advancing universal service.  Slip op. 10.  This Court recognized the significance of those limits more than two decades ago when it observed that "excessive funding" of universal service programs could "violate

---

[5] Insofar as petitioners suggest that *J.W. Hampton* and *Skinner* upheld revenue-raising delegations only because Congress "established mathematical ceilings" (Pet. 9), they "misconstrue" those decisions. *See Consumers' Rsch.*, 2023 WL 3244274, **9-11.

the sufficiency requirements" of section 254 "by causing [phone service] rates unnecessarily to rise, thereby pricing some consumers out of the market" and thwarting the fundamental objective of universal service: making affordable service available to all consumers. *Alenco*, 201 F.3d at 620.

As *Alenco* demonstrates, petitioners err in complaining that the guidance provided by section 254 is largely "aspirational" and does not constrain the Commission. Pet. vii, 6. This Court and others have overturned Commission decisions implementing the universal service program on the ground that the agency failed to take proper account of the factors laid out in section 254. *See TOPUC I*, 183 F.3d at 434 (remanding for failure to comply with section 254(d)'s requirement that contributions be "equitable and nondiscriminatory"); *Qwest Corp. v. FCC*, 258 F.3d 1191, 1199-1202 (10th Cir. 2001) (remanding for failure to comply with section 254(b)(3)'s directive to ensure comparability of rural and urban rates). The principles in section 254 have bite.

Petitioners also argue that section 254 "should be deemed unconstitutional" because it makes a "'multi-layer' delegation" by allowing the FCC to revise the definition of universal service and add new universal service principles. Pet. 11. The statute, however, imposes clear constraints on the Commission's discretion to do so. *See* 47 U.S.C. § 254(b)(7), (c)(1).

The FCC is empowered to add new universal service principles only if "the [Federal-State] Joint Board [on Universal Service] *and* the Commission determine" that such principles "are necessary and appropriate for the protection of the public interest" and "are consistent with" the Communications Act.  47 U.S.C. § 254(b)(7) (emphasis added).[6]  The Commission does not have the power to add new principles on its own.

Likewise, the FCC is authorized to revise the definition of universal service periodically, "taking into account advances in telecommunications and information technologies and services," *id*. § 254(c)(1), only after considering statutorily specified criteria, including the extent to which such services "are essential to education, public health, or public safety," have been subscribed to "by a substantial majority of residential customers," are "being deployed in public telecommunications networks by telecommunications carriers," and "are consistent with the public interest."  *See id*. § 254(c)(1)(A)-(D).

In sum, as the panel correctly held, section 254 "does not violate the nondelegation doctrine" because "the statute is replete with intelligible principles to guide the FCC" in "its administration of the [Universal Service Fund]," and

---

[6] The Federal-State Joint Board on Universal Service is an eight-member Board comprised of three FCC Commissioners, four State Utility Commissioners, and a consumer advocate representative.  *See* https://www.fcc.gov/general/universal-service-federal-state-joint-board.

"those principles sufficiently limit the FCC's revenue-raising activity." Slip op.

12.

## II.    THE FCC HAS NOT DELEGATED REGULATORY POWER TO USAC.

The panel also properly rejected petitioners' claim (Pet. 14-16) that the FCC

unlawfully delegated regulatory power to USAC. The law is clear that agencies

"may subdelegate to private entities so long as the entities function subordinately

to the federal agency and the federal agency has authority and surveillance over

their activities." *Rettig*, 987 F.3d at 532; *Sunshine Anthracite Coal*, 310 U.S. at

399.

Here, as the panel correctly found, USAC is entirely "subordinate[d]" to the

FCC's pervasive oversight. Slip op. 14. USAC "may not make policy, interpret

unclear provisions of the statute or rules, or interpret the intent of Congress." 47

C.F.R. § 54.702(c). As the panel recognized (slip op. 14), (1) USAC has no

independent rulemaking authority, and any proposals made by USAC "are not

binding on carriers until the FCC approves them," *see* 47 C.F.R. § 54.709(a); (2)

carriers may appeal USAC decisions to the FCC, and the Commission "often

grants relief" on appeal, *see id*. § 54.719(b); and (3) the FCC "dictates how USAC

calculates the [universal service] contribution factor and subsequently reviews the

calculation method after USAC makes a proposal," *id*. §§ 54.709(a)(2)-(3),

54.711(a). The agency "only uses" USAC's projections to calculate the quarterly

16

contribution factor "after independent consideration of the collected data and other relevant information."  Slip op. 14.

Petitioners contend that "the FCC has *never* substantively changed USAC's proposals."  Pet 15.  That is incorrect.  The FCC has revised USAC's calculations to account for changes in Commission policy.[7]  Nor is it surprising that the Commission's revisions are infrequent, given USAC's relatively straightforward accounting role.  In making its projections of quarterly expenses, USAC must comply "with FCC rules that limit or cap available support and formulas for" calculating certain universal service expenses.  *Consumers' Rsch.*, 2023 WL 3244274, *16.[8]  Given the detailed constraints that the FCC's rules place on USAC's cost projections, it is unremarkable that the FCC has rarely been required to modify USAC's projections.

In any event, "the FCC's choice often to approve [USAC's] projections does not change the fact that the FCC has the authority to reject or modify" them.

---

[7] *See Revised Second Quarter 2003 Universal Service Contribution Factor*, 18 FCC Rcd 5097 (WCB 2003) (adjusting rate from 9.0044% to 9.1%); *First Quarter 1998 Universal Service Contribution Factors Revised and Approved*, 12 FCC Rcd 21881 (CCB 1997) (setting "the approved contribution factors").

[8] *See, e.g.,* 47 C.F.R. § 54.302(a) (limiting the amount of high-cost support per line); *id*. § 54.507(a) (imposing a cap on support for schools and libraries); *id*. § 54.619(a) (imposing a cap on support for rural health care providers); *id*. § 54.303 (formulas for calculating the capital investment and operating expenses of rate-of-return carriers that are eligible for high-cost support).

*Consumers' Rsch.*, 2023 WL 3244274, *16.  Under 47 C.F.R. § 54.709(a)(3), the

FCC—not USAC—has "the final say" as to what the contribution factor will be.

*See Boerschig v. Trans-Pecos Pipeline, LLC*, 872 F.3d 701, 708 (5th Cir. 2017).  If

a carrier believes that USAC has miscalculated the amount of its universal service

contribution, it can appeal USAC's invoice to the FCC; and if the FCC agrees with

the carrier, it will direct USAC to make the necessary adjustments.  *See Universal*

*Service Contribution Methodology*, 31 FCC Rcd 13220 (WCB 2016) (reversing

USAC decision to assess contributions on the basis of certain revenues that were

not properly classified as interstate telecommunications revenues).

In short, because USAC has only a limited role in administering the

universal service program, and even in that role "the FCC properly subordinates

USAC" to the agency's pervasive oversight, the panel correctly concluded that the

Commission "has not violated the private nondelegation doctrine."  Slip op. 14.

## **CONCLUSION**

The petition for rehearing en banc should be denied.

Respectfully submitted,

| | |
|---|---|
| Brian M. Boynton | P. Michele Ellison |
| Principal Deputy Assistant | General Counsel |
|   Attorney General | |
| | |
| Sarah E. Harrington | Jacob M. Lewis |
| Deputy Assistant Attorney General | Deputy General Counsel |
| | |
| */s/ Gerard J. Sinzdak* | */s/ James M. Carr* |
| | |
| Mark B. Stern | James M. Carr |
| Gerard J. Sinzdak | Adam G. Crews |
| Attorneys | Counsel |
| | |
| United States Department of Justice | Federal Communications Commission |
| Washington, D.C.  20530 | Washington, D.C.  20554 |
| | (202) 418-1740 |

May 22, 2023

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.  This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒    this document contains <u>3,873</u> words, *or*

    ☐    this document uses a monospaced typeface and contains _ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒    this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐    this document has been prepared in a monospaced spaced typeface using _____ with _____.

<u>*/s/ James M. Carr*</u>

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C.  20554
(202) 418-1740

## CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on May 22, 2023, I filed the foregoing Opposition of Respondents to Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740