**No. 22-60008**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

**CONSUMERS' RESEARCH; CAUSE BASED COMMERCE, INCORPORATED; KERSTEN CONWAY; SUZANNE BETTAC; ROBERT KULL; KWANG JA KERBY; TOM KIRBY; JOSEPH BAYLY; JEREMY ROTH; DEANNA ROTH; LYNN GIBBS; PAUL GIBBS; RHONDA THOMAS,**

*Petitioners*,

**v.**

**FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA,**

*Respondents.*

---

Petition for Review of an Order of the
Federal Communications Commission
Agency No. 96-45

---

# REPLY IN SUPPORT OF PETITION FOR REHEARING EN BANC

---

R. Trent McCotter
*Counsel of Record*
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY & ASSOCIATES
801 17th Street NW., Suite 350
Washington, DC 20006
202-706-5488
mccotter@boydengrayassociates.com
*Counsel for Petitioners*

# CERTIFICATE OF INTERESTED PERSONS

*Consumers' Research et al. v. Federal Communications Commission et al.*
No. 22-60008

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Petitioners*

1. Consumers' Research. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

2. Cause Based Commerce, Incorporated. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

3. Kersten Conway

4. Suzanne Bettac

5. Robert Kull

6. Kwang Ja Kirby

7. Tom Kirby

8. Joseph Bayly

9. Jeremy Roth

10. Deanna Roth

11. Lynn Gibbs

12. Paul Gibbs

13. Rhonda Thomas

*Respondents*

14. Federal Communications Commission

15. United States of America

*Intervenors*

16. Benton Institute for Broadband & Society

17. National Digital Inclusion Alliance

18. Center for Media Justice (d/b/a MediaJustice)

19. Schools, Health & Libraries Broadband Coalition

20. National Telecommunications Cooperative Association (d/b/a NTCA – The Rural Broadband Association)

21. Competitive Carriers Association

*Counsel*

22. Boyden Gray & Associates PLLC: C. Boyden Gray, R. Trent McCotter, Jonathan Berry, Michael Buschbacher, and Jared M. Kelson are counsel for Petitioners.

23. Federal Communications Commission: James M. Carr, Adam Crews, and Jacob M. Lewis are counsel for Respondent FCC.

24. United States Department of Justice: Gerard J. Sinzdak is counsel for Respondent United States of America.

25. Andrew Jay Schwartzman is counsel for Intervenors Benton Institute for Broadband & Society, National Digital Inclusion Alliance, and Center for Media Justice (d/b/a MediaJustice).

26. Harris, Wiltshire & Grannis, LLP: Jason Neal and Stephanie Weiner are counsel for Intervenors Schools, Health & Libraries Broadband Coalition.

27. Wilkinson, Barker & Knauer LLP: Jennifer Tatel and Craig Gilmore are counsel for USTelecom – The Broadband Association; National Telecommunications Cooperative Association (d/b/a NTCA – The Rural Broadband Association); and Competitive Carriers Association.

Dated: May 22, 2023

/s/ R. Trent McCotter
R. Trent McCotter
*Counsel of Record for Petitioners*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ i

TABLE OF CONTENTS ........................................................................ v

TABLE OF AUTHORITIES ................................................................... vi

INTRODUCTION ................................................................................. 1

ARGUMENT ......................................................................................... 2

I. The Sixth Circuit's Decision Confirms this Case Warrants En Banc Review. ......................................................................... 2

A. Unique Scheme with No Limit on the FCC's Revenue-Raising. ........................................................ 2

B. Dual-Layer Delegation. .................................................. 5

C. Interpretations of § 254 that Directly Contradict Fifth Circuit Precedent. ................................................ 6

D. Private Nondelegation Violation. .................................. 8

E. Scope of Relief. ............................................................ 9

CONCLUSION .................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Consumers' Research v. FCC*, ___ F.4th ___, 2023 WL 3244274 (6th Cir. May 4, 2023) .................................... 2, 3, 4, 6, 7, 8, 9

*J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394 (1928) ........................................................................ 4

*Lichter v. United States*, 334 U.S. 742 (1948) ........................................... 5

*Mistretta v. United States*, 488 U.S. 361 (1989) ....................................... 3

*National Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022) ............................................................ 10

*NCTA v. United States*, 415 U.S. 336 (1974) ............................................ 4

*Qwest Corp. v. FCC*, 258 F.3d 1191 (10th Cir. 2001) ............................... 7

*Rural Cellular Ass'n v. FCC*, 588 F.3d 1095 (D.C. Cir. 2009) .................. 7

*Sierra Club v. Lynn*, 502 F.2d 43 (5th Cir. 1974) ..................................... 8

*Skinner v. Mid-Am. Pipeline Co.*, 490 U.S. 212 (1989) ............................ 4

*Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393 (5th Cir. 1999) ............................................................... 7

*Tex. Off. of Pub. Util. Couns. v. FCC*, 265 F.3d 313 (5th Cir. 2001) ............................................................... 6

*Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666 (6th Cir. 2021) ................................................................. 3

*United States v. Grimaud*, 220 U.S. 506 (1911) ....................................... 5

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) ........................... 7

**Statutes**

47 U.S.C. § 254 .......................................................................... 6, 7

# INTRODUCTION

At issue in this case is whether an agency can perpetually self-raise billions of dollars in taxes without meaningful statutory limits and whether the agency can then hand over that power to a private company so the agency's politically accountable leaders never again have to lift a finger. If this kind of historically unique scheme were replicated elsewhere, Congress would never have to appropriate funds or pass a budget. Congress could even let the IRS determine for itself the income tax rates imposed on all Americans.

In their opposition, Respondents repeatedly rely on a recent Sixth Circuit decision upholding the Universal Service Fund revenue-raising scheme in the context of a different quarterly ratemaking. *See* Opp.1, 10, 17, 18 (citing *Consumers' Research v. FCC*, ___ F.4th ___, 2023 WL 3244274 (6th Cir. May 4, 2023)). That opinion was issued after Petitioners filed their petition for en banc rehearing in this Court.

As explained below, by upholding the USF scheme despite acknowledging the lack of objective limits on the FCC and its passive role vis-à-vis USAC, the Sixth Circuit panel opinion only further confirms that en banc rehearing is warranted here.

# ARGUMENT

## I. THE SIXTH CIRCUIT'S DECISION CONFIRMS THIS CASE WARRANTS EN BANC REVIEW.

### A. UNIQUE SCHEME WITH NO LIMIT ON THE FCC'S REVENUE-RAISING.

The Sixth Circuit panel opinion agreed with Petitioners that, unlike other general welfare or taxing programs, "Congress neither capped the amount that the FCC may raise in contributions for the [Universal Service] Fund nor imposed a formula for how to calculate the contributions to the Fund." 2023 WL 3244274, at *9; *see* CA5.EnBanc.Pet.7.

The Sixth Circuit panel opinion, however, wholeheartedly endorsed this scheme, holding that broad and vague delegations giving federal agencies the power to raise billions of dollars in revenue are perfectly acceptable "'in our increasingly complex society.'" 2023 WL 3244274, at *9, *13.

But the decision of how much money to raise from the general public for a multi-billion-dollar welfare program is not some trifling technical detail for agency bureaucrats. The revenue-raising power is at the core of Congress's legislative power under Article I, and thus Congress itself must set that limit.

As Judge Thapar has explained, the "original meaning, history, and structure of our Constitution" thus confirm that it is no answer to say—as the Sixth Circuit panel opinion did—that "modern society is too complex to be run by legislators—better to leave it to the agency bureaucrats." *Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 5 F.4th 666, 674 (6th Cir. 2021) (Thapar, J., concurring).

Rejecting the notion that Congress's delegations of the revenue-raising power require any kind of formula or limits, the Sixth Circuit panel opinion stated that "we apply one universal intelligible-principle test regardless of the type of statute at issue." 2023 WL 3244274, at *9. But the Supreme Court has held that the intelligible-principle inquiry itself turns on "'the extent and character'" of the particular power delegated. *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Thus, there always must be an "intelligible principle" under current doctrine, but what *suffices* as an intelligible principle will vary based on context.

The Sixth Circuit panel opinion's misunderstanding of this distinction led it to rely on distinguishable cases upholding vague delegations of scientific matters, while simultaneously ignoring or discounting cases that involved agency revenue-raising, as here. 2023

WL 3244274, at *9–11. And the Supreme Court has held there is a difference between the two. *See* CA5.EnBanc.Pet.8–9.

Most notably, in *NCTA*, the Court held that giving an agency the power to raise money based only on vague statutory phrases like "'public policy or interest served, and other pertinent facts'" raises the specter of "forbidden delegation of legislative power" by "carr[ying] [the] agency far from its customary orbit and put[ting] it in search of revenue in the manner of an Appropriations Committee of the House." *NCTA v. United States*, 415 U.S. 336, 341–42 (1974).

*NCTA* laid down a marker: vague phrases like "public policy" may pass nondelegation muster in certain scientific contexts, but not when it comes to the core power of revenue-raising. Yet the Sixth Circuit panel opinion did not cite *NCTA* even once, which allowed that court to conclude it was mere coincidence that every Supreme Court decision approving revenue-raising delegations did so only when there was some form of statutorily imposed objective limit on the executive's ability to self-fund. 2023 WL 3244274, at *10–11; *see J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 401 (1928) (imposed duty could not vary more than 50% from the statutory figure); *Skinner v. Mid-Am. Pipeline*

*Co.*, 490 U.S. 212, 215 (1989) (agency could not raise more than 105% of the amount already appropriated by Congress).

That distinction is important under Supreme Court precedent, but the Sixth Circuit panel opinion denied the distinction even exists.[1]

### B. DUAL-LAYER DELEGATION.

Petitioners also argued to the Sixth Circuit that the USF operates via a unique "dual-layer" delegation: Congress not only gave the FCC authority to raise money for "universal service," it also gave the FCC the power to *redefine* universal service and raise money for that expanded scope. *See also* CA5.EnBanc.Pet.11–12.

---

[1] The Sixth Circuit also relied in passing on *Lichter v. United States*, 334 U.S. 742 (1948), but that case is inapposite because of its wartime posture, *see* Reply.Br.20.n.6, and also because it did not involve general revenue-raising but instead imposed terms on recouping funds expended via government contracting—i.e., how the government *spends* its revenues, rather than how it *raises* them in the first place.

The Sixth Circuit declined to adopt the FCC's reliance on *United States v. Grimaud*, 220 U.S. 506 (1911); Opp.13, perhaps because the only question there was whether Congress had given the Secretary the power to charge fees for grazing on federal land (the Court concluded Congress had done so)—*not* whether Congress imposed sufficiently clear boundaries on the *amount* the Secretary could charge, as might be relevant here. 220 U.S. at 522. And tellingly, Congress had established a $500 cap on any fine in *Grimaud*. *Id.* at 509. Conspicuously absent is any similar objective limit on the FCC's power to raise money for the USF.

But in response, the Sixth Circuit panel opinion turned the nondelegation doctrine on its head by holding that this dual-layer delegation "reflects the exact rationale that underpins the nondelegation doctrine." 2023 WL 3244274, at *13. Of course, the nondelegation doctrine exists precisely to *prevent* the executive branch from being able to redefine its own scope of taxing power.

### C. INTERPRETATIONS OF § 254 THAT DIRECTLY CONTRADICT FIFTH CIRCUIT PRECEDENT.

In seeking to identify statutory limits on the FCC, the Sixth Circuit panel opinion largely parroted this Court's panel opinion. In particular, the Sixth Circuit panel opinion quoted at length this Court's decision that 47 U.S.C. § 254(b) imposes substantive "'require[ments]'" "'to ensure that telecommunications services are: (1) of decent quality and reasonably priced; (2) equally available,'" etc. 2023 WL 3244274, at *12. The Sixth Circuit labeled these aphorisms as "provid[ing] comprehensive and substantial guidance and limitations." *Id.*

But that directly contradicts this Court's holdings and the FCC's own statements that those same § 254(b) principles are so vague and amorphous that they are "merely aspirational." *Tex. Off. of Pub. Util. Couns. v. FCC*, 265 F.3d 313, 321 (5th Cir. 2001). Such precatory

limitations are no limitation at all because "an agency's voluntary self-denial" is irrelevant to a nondelegation challenge. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 473 (2001).[2]

The Sixth Circuit panel opinion also believed that § 254 requires the FCC to raise only just enough money to "achieve the purposes of universal service," in effect setting a "soft cap." 2023 WL 3244274, at *14. But this Court, the D.C. Circuit, and the *FCC itself* have agreed that "nothing in the statute" requires that "universal service support must equal the actual costs incurred." *Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 412 (5th Cir. 1999); *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1102 (D.C. Cir. 2009). The FCC cannot have it both ways. *See* CA5.EnBanc.Pet.10–11.

The Sixth Circuit panel opinion also repeatedly cited § 254(c) and (e), which pertain to *spending* USF money, 2023 WL 3244274, at *13–14, but again that reliance is misplaced. The FCC itself has agreed that "spending decision[s]" are "irrelevant to this case." Gov.Br.60.

---

[2] The Sixth Circuit and FCC both relied on *Qwest Corp. v. FCC*, 258 F.3d 1191 (10th Cir. 2001), *see* 2023 WL 3244274, at *11; Opp.14, but that case primarily involved the FCC's failure to comply with *procedural* requirements like explaining its conclusions, *see Qwest I*, 258 F.3d at 1201, not substantive restrictions on the FCC's power to raise revenue.

### D. PRIVATE NONDELEGATION VIOLATION.

The Sixth Circuit panel opinion also gave a ringing endorsement of the FCC's decades of rubber stamping of private company USAC's determinations of the USF quarterly tax rate. Again parroting this Court's panel opinion, the Sixth Circuit claimed the FCC "'only uses USAC's proposals after independent consideration of the collected data and other relevant information.'" 2023 WL 3244274, at *16. But there is zero evidence of this. The FCC does not even engage in the *pretense* of review. It never issues a separate approval document nor responds to comments filed by the public. And because this "approval" process plays out on the eve of each new quarter, the FCC has no choice but to accept whatever USAC proposes. The Sixth Circuit panel opinion tellingly never addressed these points.

Rather, the Sixth Circuit oddly concluded the FCC could "rubber stamp" USAC's proposals because doing so is an exercise of the FCC's "policymaking discretion … '*not* to act.'" *Id.* But letting private proposals *automatically* become binding is the very definition of a private nondelegation violation, not a "policymaking decision." *See Sierra Club*

*v. Lynn*, 502 F.2d 43, 59 (5th Cir. 1974) (agency must "independently perform its reviewing, analytical and judgmental function").

If a private company can perpetually collect billions of dollars in taxes pursuant to a statute with no "formula" or "cap," 2023 WL 3244274, at *9, and without the FCC Commissioners ever lifting a finger, nothing remains of the political accountability mandated by the private nondelegation doctrine, *see* CA5.EnBanc.Pet.12–13.

### E. SCOPE OF RELIEF.

The Sixth Circuit also implied that granting relief to Petitioners would cause drastic consequences, *see* 2023 WL 3244274, at *1, *2, and the FCC echoes those claims to this Court, *see* Opp.1, 3. Those concerns are unfounded because Petitioners expressly acknowledged this Court could limit relief only to the named Petitioners, who consist primarily of a few individual customers forced to pay the USF tax each month. *See* Reply.5.n.2. The claims of dire consequences are also directly undercut by the high likelihood of a congressional remedy, as demonstrated by the bipartisan amicus brief submitted by members of Congress in this very case, *see* Brief of Amici Curiae Members of Congress (5th Cir. June 17, 2022), and also by Congress's swift statutory fix after this Court found a

private nondelegation violation in *National Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022).

## CONCLUSION

The Court should grant rehearing *en banc*.

May 22, 2023

Respectfully submitted,

/s/ R. Trent McCotter
R. Trent McCotter
*Counsel of Record*
Jonathan Berry
Michael Buschbacher
Jared M. Kelson
BOYDEN GRAY & ASSOCIATES
801 17th Street NW, Suite 350
Washington, DC 20006
202-706-5488
mccotter@boydengrayassociates.com

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

/s/ R. Trent McCotter
R. Trent McCotter

## CERTIFICATE OF COMPLIANCE

This brief contains 1868 words, excluding the parts of the brief exempted by Rule 32(f). The Federal Rules of Appellate Procedure do not impose requirements for reply briefs in support of petitions for rehearing en banc. Analogizing from similar rules, Petitioners have limited the length of this brief to less than one-half the length of an en banc petition (i.e., half of 3900 words).

This reply complies with the typeface and typestyle requirements of Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ R. Trent McCotter
R. Trent McCotter