IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

Consumers' Research, et al., )
                       Petitioners, )
                                                 )
          v. )    No. 22-60008
                                                 )
Federal Communications Commission )
  and United States of America, )
                       Respondents. )

**REPLY TO PETITIONERS' OPPOSITION
TO RESPONDENTS' MOTION TO DISMISS**

The nondelegation and private nondelegation claims that petitioners assert in this case are identical to the claims that they raised in the Eleventh Circuit and that most of them raised in the Sixth Circuit. Those courts have issued final judgments rejecting petitioners' claims. Therefore, as respondents explained in their motion to dismiss, petitioners are collaterally estopped from presenting the same claims to this Court. Accordingly, consistent with basic principles of issue preclusion, the Court should dismiss this petition for review.

In opposing dismissal, petitioners argue (Opp. 4-6) that this case falls within the exception to issue preclusion that this Court recognized in *Matter of Westmoreland Coal Co.*, 968 F.3d 526 (5th Cir. 2020). In that case, the Court applied "an exception to *nonmutual* issue preclusion for pure issues of law." *Id*. at 532 (emphasis added); see RESTATEMENT (SECOND) OF JUDGMENTS § 29(7) (1982). This case, however, involves *mutual* issue preclusion; both sets of parties

(petitioners and respondents) were parties to the previous litigation. In cases like this one, the exception to issue preclusion is more limited. *See Pharm. Care Mgmt. Ass'n v. Dist. of Columbia*, 522 F.3d 443, 446 (D.C. Cir. 2008). That exception is inapplicable to this case.

The exception to mutual issue preclusion for purely legal issues applies only if "the two actions involve claims that are substantially unrelated." RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)(a). In other words, before a party can relitigate a legal issue that would otherwise be subject to collateral estoppel, a court must determine that the subsequent case in which the legal issue arises "is so unrelated to the prior case that relitigation of the issue is warranted." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 171 (1984). "When the claims in two separate actions between the same parties are the same or are closely related—for example, when they involve asserted obligations arising out of the same subject matter," and when a legal issue "has been actually litigated and determined and the determination was essential to the judgment" in a prior lawsuit, "preclusion will apply." RESTATEMENT (SECOND) OF JUDGMENTS § 28, Comment b. "In such a case," the Supreme Court explained, it would be "unfair to the winning party and an unnecessary burden on the courts to allow repeated litigation of the same issue in what is essentially the same controversy, even if the issue is regarded as one of

'law.'" *Stauffer Chem.*, 464 U.S. at 171 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28, Comment b).  This is just such a case.

The claims that petitioners have repeatedly raised in multiple courts of appeals involve asserted obligations arising out of the same subject matter:  the obligations of telecommunications carriers under 47 U.S.C. § 254(d) to contribute to the FCC's universal service fund.  In each case, the material facts are the same.  For every calendar quarter, the FCC establishes a contribution factor that is used to calculate the amount of each carrier's universal service contribution.  And in setting each contribution factor, the Commission uses cost projections submitted by the Universal Service Administrative Company, the administrator of the universal service program.  Moreover, there is a "close alignment of time" among the cases brought by petitioners.  *See Stauffer Chem.*, 464 U.S. at 172.  In this case, petitioners challenge the contribution factor for the first quarter of 2022.  In the Sixth Circuit, petitioners unsuccessfully challenged the contribution factor for the fourth quarter of 2021.  *Consumers' Rsch. v. FCC*, 67 F.4th 773, 783 (6th Cir. 2023).  And in the Eleventh Circuit, petitioners unsuccessfully challenged the contribution factor for the fourth quarter of 2022.  *Consumers' Rsch. v. FCC*, 88 F.4th 917, 921 (11th Cir. 2023).

Petitioners contend that each of these cases can be "framed as presenting a *different* challenge to a *different* FCC proceeding."  Opp. 7.  For collateral estoppel

3

purposes, however, "[a]ny factual differences" between this case and the others (such as the particular quarter at issue or the level at which the FCC set the contribution factor) "are of no legal significance whatever in resolving the [nondelegation claims] presented in [these] cases." *Stauffer Chem.*, 464 U.S. at 172; *see also B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) (a party cannot "escape the preclusive effect of an adverse judgment" by pointing to immaterial factual differences). Consequently, this case falls outside the exception to mutual issue preclusion for purely legal issues.

In describing the limits of this exception, the Restatement (Second) of Judgments provided an example of a case where the exception would not apply: "[I]f a corporation issues a series of notes for the repayment of a loan, and the holder of the note brings an action on one of them, and the corporation's defense that issuance of the notes was ultra vires is rejected by the court, the judgment is conclusive on that issue in a subsequent action on another of the notes." RESTATEMENT (SECOND) OF JUDGMENTS § 28, Comment b. The facts of this case are similar to that situation. The FCC has adopted a series of quarterly universal service contribution factors. Petitioners have raised nondelegation challenges to several of those decisions in multiple courts of appeals. Two courts have rejected petitioners' claims. The judgment of those courts is conclusive on the

nondelegation issues in any subsequent case in which the same petitioners mount the same legal challenge, even in the context of a different contribution factor.

Petitioners maintain that issue preclusion would be "improper here" because respondents "procured the denials of certiorari in the Sixth and Eleventh Circuit cases in part by teasing the Supreme Court with the prospect of future merits review in *this case*." Opp. 6. In opposing certiorari, however, respondents did not state that a decision from this Court would necessarily address the merits. Rather, it was *petitioners* who brought up that possibility. They asserted that "[a]lthough there is no circuit split yet on these issues, the Fifth Circuit is poised to create one." Pet. 8, *Consumers' Rsch. v. FCC*, No. 23-743 (U.S. Jan. 5, 2024). Respondents simply responded to that argument by observing that this Court had "not yet issued its decision" in this case: "Once it does so, the parties can determine whether to seek, and [the Supreme] Court can determine whether to grant, certiorari to review that decision." Br. in Opp'n 17-18, *Consumers' Rsch. v. FCC*, Nos. 23-456, 23-743 (U.S. May 3, 2024).

Moreover, if the Supreme Court thought that the cert petitions raised significant issues requiring further consideration, it could have held the petitions until this Court issued a ruling in this case. Indeed, petitioners urged the Supreme Court to do so. *See* Reply Br. 3, *Consumers' Rsch. v. FCC*, Nos. 23-456, 23-743 (U.S. May 21, 2024) ("If review is not granted now, this Court should at least hold

5

these Petitions until the Fifth Circuit issues its decision."). Instead, the Supreme Court decided to deny the cert petitions without waiting for a decision in this case. Contrary to petitioners' assertion, nothing about the government's opposition to the cert petitions or the Supreme Court's denial of certiorari would justify this Court's deviation from fundamental tenets of issue preclusion.

Finally, in an effort to avoid the preclusive effect of the Sixth and Eleventh Circuit decisions, petitioners propose that this Court consolidate this case with a recently filed petition (No. 24-60330) seeking review of the FCC's universal service contribution factor for the third quarter of 2024. The new petition includes two new petitioners (James Romeo and Cody Carnett) who did not participate in any of the previous cases involving the other petitioners. *See* Opp. 8-9. To date, petitioners have not filed a motion asking the Court to consolidate this case with No. 24-60330.

The consolidation proposed by petitioners would mark a departure from this Court's past practice in this litigation. In the two years since petitioners filed this case, they have filed a series of petitions for review of universal service contribution factors for seven different quarters (Nos. 22-60195, 22-60363, 23-60359, 23-60525, 24-60006, 24-60160, and 24-60330). This Court has not previously consolidated any of these petitions with No. 22-60008. Instead, it has held the first six of these petitions in abeyance pending a ruling in this case.

6

In the event that the Court adopts petitioners' proposal and consolidates No. 24-60330 with this case, it should still dismiss No. 22-60008. The petitioners in No. 22-60008 are precluded from raising the same claims they presented to the Sixth and Eleventh Circuits.

The Court should also dismiss six other pending petitions in this litigation (Nos. 22-60195, 22-60363, 23-60359, 23-60525, 24-60006, and 24-60160). The petitioners in those cases all raised their nondelegation claims in the Eleventh Circuit. Consequently, they are estopped from raising those claims here.

## CONCLUSION

The Court should grant the motion to dismiss.

Respectfully submitted,

| | |
|---|---|
| Brian M. Boynton<br>Principal Deputy Assistant<br>  Attorney General | P. Michele Ellison<br>General Counsel |
| Sarah E. Harrington<br>Deputy Assistant Attorney General | /s/ Jacob M. Lewis<br><br>Jacob M. Lewis |
| Mark B. Stern<br>Gerard J. Sinzdak<br>Attorneys | Deputy General Counsel |
| United States Department<br>  of Justice<br>Washington, D.C.  20530 | James M. Carr<br>Counsel<br><br>Federal Communications Commission<br>Washington, D.C.  20554<br>(202) 418-1740 |

July 5, 2024

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

   ☒ this document contains <u>1458</u> words, *or*

   ☐ this document uses a monospaced typeface and contains _ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

   ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

*/s/ Jacob M. Lewis*

Jacob M. Lewis
Deputy General Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

# CERTIFICATE OF FILING AND SERVICE

I, Jacob M. Lewis, hereby certify that on July 5, 2024, I filed the foregoing Reply to Petitioners' Opposition to Respondents' Motion to Dismiss with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Jacob M. Lewis*

Jacob M. Lewis
Deputy General Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740