IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| Consumers' Research, et al., | ) | |
|                         Petitioners, | ) | |
| | ) | |
| v. | ) | No. 22-60008 |
| | ) | |
| Federal Communications Commission | ) | |
|  and United States of America, | ) | |
|                         Respondents. | ) | |

**RESPONDENTS' OPPOSITION TO
PETITIONERS' MOTION FOR SUPPLEMENTAL BRIEFING**

Respondents, the Federal Communications Commission (FCC) and the United States, submit this opposition to petitioners' motion for supplemental briefing on remand.

On June 27, 2025, the United States Supreme Court rejected a constitutional challenge to the FCC's Universal Service program, concluding that the program involved "no impermissible transfer of authority" that would violate the nondelegation doctrine. *FCC v. Consumers' Research*, No. 24-354, 2025 WL 1773630, at *4 (U.S. June 27, 2025). In so doing, the Supreme Court reversed this Court's decision and remanded "for further proceedings consistent with this opinion." *Id.* at *19. Petitioners contend that those further proceedings should include supplemental briefing on an issue that they have never raised in this litigation and that the Supreme Court accordingly did not address: whether

sections 254(c)(3) and (h)(2) of the Communications Act, 47 U.S.C. § 254(c)(3), (h)(2), violate the nondelegation doctrine. Mot. 5.

The supplemental briefing requested by petitioners is unwarranted for two separate and independent reasons. First, the argument on which petitioners seek supplemental briefing has been waived. Petitioners in this case never previously made the claim—either before this Court or before the Supreme Court—that they now seek to raise on remand. Second, petitioners are precluded from challenging the constitutionality of sections 254(c)(3) and (h)(2) on remand because the FCC was "afforded no opportunity to pass" on this issue, as the Communications Act requires. *See* 47 U.S.C. § 405(a). For these reasons, the Court should deny petitioners' motion for supplemental briefing.[1]

## ARGUMENT

### I. PETITIONERS' CLAIMS REGARDING THE CONSTITUTIONALITY OF SECTIONS 254(C)(3) AND (H)(2) HAVE BEEN WAIVED.

In their briefs to this Court, petitioners expressly and repeatedly emphasized that they were *not* raising any objection to the funding of any particular universal service program. *See, e.g.*, Pet. Reply Br. 37 (petitioners "do not raise a

---

[1] Petitioners' motion is also premature at this point, since a certified copy of the Supreme Court's judgment (which the Court issues in lieu of a formal mandate) will not issue until July 29, thirty-two days after the entry of the Court's judgment. *See* Sup. Ct. R. 45.3.

nondelegation challenge to how [universal service] revenues are *disbursed*, but only to the mechanism for determining and raising those revenues").

Instead, in this Court and in the Supreme Court, petitioners argued that "the contribution scheme" established by section 254 "generally is unconstitutional, and that the contribution factor" (*i.e.*, the percentage of interstate telecommunications revenues that the FCC requires carriers to contribute to the Universal Service Fund) "should be set to zero." *See* 2025 WL 1773630, at *14 n.9. Because petitioners chose to focus their arguments on the issue of "revenue raising," they did not assert that any provisions of section 254 concerning the disbursement of money to universal service programs were unconstitutional. In particular, they did not claim that sections 254(c)(3) and (h)(2) unlawfully delegated legislative power to the FCC.

Section 254(c)(3) provides that, in addition to the supported services that fall within the definition of "universal service" under section 254(c)(1), "the Commission may designate additional services" to receive universal service funding under the two programs created by section 254(h): the E-Rate program, which provides for discounted service to schools and libraries; and the Rural Health Care program, which subsidizes service to rural health care providers. 47 U.S.C. § 254(c)(3). Section 254(h)(2) also relates to the disbursement of funds under those two programs. It directs the FCC to establish "competitively neutral"

rules "to enhance, to the extent technically feasible and economically reasonable, access to advanced telecommunications and information services for all public and nonprofit elementary and secondary school classrooms, health care providers, and libraries." 47 U.S.C. § 254(h)(2).

Petitioners have never argued that those specific provisions—or, for that matter, any other specific subsections of section 254—are unconstitutional. Rather, they elected to mount a comprehensive challenge to the FCC's general authority to raise revenues under section 254, claiming that the statute improperly delegated taxing power to the Commission. And in presenting their case, petitioners made clear that they were *not* making "a nondelegation challenge to how [universal service] revenues are *disbursed*" under section 254. Pet. Reply Br. 37; *see also id.* at 24 n.8 ("Petitioners raise a nondelegation challenge only to how Universal Service Fund revenues are raised"); *id.* at 31 (the provisions of section 254 concerning "*disbursements* are not particularly relevant to" the issue in this case: "whether there is an intelligible principle for *raising* money"); Pet. En Banc Br. 44 (agreeing with respondents' statement "that 'spending decision[s]' are 'irrelevant to this case'") (quoting FCC Br. 60); *id.* at 44-45 ("the question" in this case "is whether Congress provided meaningful limits on how much the FCC can raise, not on how it then spends the funds"). Consequently, they never contended

4

before this Court that sections 254(c)(3) and (h)(2)—two provisions concerning the *disbursement* of funds—violated the nondelegation doctrine.

As a result, the Supreme Court had "no occasion to address any nondelegation issues raised by Sections 254(c)(3) and (h)(2) in particular." 2025 WL 1773630, at *14 n.9. As the Supreme Court emphasized, petitioners did "not argue" that those discrete subsections "are unconstitutional" or "advance any arguments … specific to those provisions." *Ibid.*[2] Instead, petitioners argued "that the contribution scheme generally is unconstitutional, and that the contribution factor should be set to zero." *Ibid.* The Supreme Court noted that this Court had "adopted that view" of the case "as well." *Ibid.* To decide the case, therefore, the Supreme Court needed to "say no more than that those conclusions are wrong." *Ibid.*

Petitioners make much of a statement in Justice Gorsuch's dissent that petitioners "remain free on remand, or in a future proceeding, to renew their attack on the constitutionality of whatever contributions the FCC demands for its subsection (c)(3) and (h)(2) programs." 2025 WL 1773630, at *35 (Gorsuch, J., dissenting). But that statement mistakenly assumed that petitioners had previously

---

[2] This Court also understood that petitioners were not challenging the constitutionality of those specific subsections of section 254. In its en banc opinion in this case, the Court did not once cite either section 254(c)(3) or section 254(h)(2).

5

made a specific "attack" on contributions associated with sections 254(c)(3) and (h)(2) that could be "renewed" on remand. To the contrary, as the opinion for the Court rightly recognized, petitioners did "not advance any arguments … specific to those provisions" in either the Supreme Court or this Court. 2025 WL 1773630, at *14 n.9 (majority opinion).

Any "further proceedings" on remand must be "consistent with [the Court's] opinion." 2025 WL 1773630, at *19. And where (as here) the Supreme Court "refuse[s] to address [an] issue" that "ha[s] not been raised" below, the issue has been "waived" and may not be litigated "on remand" from the Court. *PSKS, Inc. v. Leegin Creative Leather Products, Inc.*, 615 F.3d 412, 420 (5th Cir. 2010).

Petitioners assert that "§§ 254(c)(3) and 254(h) were covered" in "the parties' prior briefing" before this Court. Mot. 8. But petitioners' opening brief before the panel did not even cite sections 254(c)(3) or (h)(2), let alone argue that those particular provisions were unconstitutional. It is well settled that arguments not raised in an initial brief on appeal are waived. *See DigitalDesk, Inc. v. Bexar County*, 135 F.4th 1019, 1021 n.2 (5th Cir. 2025); *Flex Frac Logistics, LLC v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014); *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue [in an opening brief] on appeal constitutes waiver of that argument.").

6

Likewise, in their subsequent briefs in this appeal, petitioners made no attempt to argue that sections 254(c)(3) and (h)(2) violate the nondelegation doctrine. Their reply brief and their en banc brief did not even mention section 254(h)(2). Those briefs made only fleeting reference to section 254(c)(3), and then solely to rebut an argument advanced by respondents—*not* to argue that subsection (c)(3) itself was unconstitutional. *See* Petitioners' Reply Br. 33; Petitioners' En Banc Br. 47.

Nor were any nondelegation claims related to sections 254(c)(3) and (h)(2) subsumed in petitioners' broader challenge to section 254. As discussed above, sections 254(c)(3) and (h)(2) deal with how universal service revenues are *spent*, not how they are *raised*. And as petitioners themselves made clear throughout their briefs, their nondelegation challenge concerned only the raising of revenue under section 254, *not* the disbursement of universal service funding. *See, e.g.*, Pet. Reply Br. 24 n.8, 31, 37; Pet. En Banc Br. 44-45.

Moreover, those provisions cover only a portion of the services that receive universal service funding (*i.e.*, certain "additional" services that are designated for funding under the E-Rate and Rural Health Care programs). Even if a challenge to those provisions were successful, the FCC could continue to collect universal service contributions to support services that fall within the definition of "universal service" under section 254(c)(1), including all of the services supported by the

High Cost and Lifeline programs. But throughout this litigation, petitioners have consistently contended that, because the raising of revenue under section 254 amounts to an unconstitutional delegation of legislative power to the FCC, the universal service contribution factor "should be set to zero." 2025 WL 1773630, at *14 n.9. That claim is fundamentally at odds with any contention on remand that sections 254(c)(3) and (h)(2) alone (rather than section 254 as a whole) are unconstitutional, because that would mean the contribution factor should be set at some amount *greater* than zero.

Contrary to petitioners' assertion (Mot. 7 & n.1), the mere fact that the Supreme Court remanded "for further proceedings" does not support petitioners' request for supplemental briefing. As this Court has previously recognized, sometimes the only task remaining for this Court on remand from the Supreme Court is to deny the petition for review and close the case.[3] Now that the Supreme Court has rejected petitioners' broad-based attack on the constitutionality of section 254, the only thing left for this Court to do on remand is to deny the petition for review and terminate the case.

---

[3] *See, e.g.*, *United States v. Texas*, 813 F.2d 679 (5th Cir. 1987) ("The Supreme Court … having reversed and remanded for further proceedings by this court, it is now ordered that the petitions of the State of Texas for review of orders of the Interstate Commerce Commission are DENIED, at its costs.").

## II. THE ISSUE WAS NOT FIRST PRESENTED TO THE COMMISSION, AND PETITIONERS ARE THEREFORE BARRED BY STATUTE FROM RAISING IT HERE.

Petitioners' request for supplemental briefing on the constitutionality of sections 254(c)(3) and (h)(2) is foreclosed for a second, independent reason: The FCC was "afforded no opportunity to pass" on the issue before petitioners filed this lawsuit, as required by statute. *See* 47 U.S.C. § 405(a); *Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 823 (5th Cir. 2018) (this Court "cannot consider" an argument that was not first presented to the FCC).

Section 405(a) of the Communications Act requires, as "a condition precedent to judicial review," that the Commission receive an "opportunity to pass" on "questions of fact or law"—including constitutional claims—that a party wishes to raise on appeal. *See Worldcall*, 907 F.3d at 823; *Viasat, Inc. v. FCC*, 47 F.4th 769, 778 (D.C. Cir. 2022); *Ad Hoc Telecomm. Users Comm. v. FCC*, 572 F.3d 903, 911-12 (D.C. Cir. 2009); *Sorenson Commcn's v. FCC*, 567 F.3d 1215, 1227-28 (10th Cir. 2009).

After the FCC issued a public notice proposing a contribution factor of 25.2 percent for the first quarter of 2022, *see* JA100-04, petitioners filed extensive comments setting forth their objections to the proposed contribution factor and to the general framework for collecting universal service contributions. *See* JA1-99. In the 100 pages of comments and exhibits that they submitted to the Commission,

not once did petitioners cite either section 254(c)(3) or section 254(h)(2). Nor did they contend before the agency that those particular provisions violated the nondelegation doctrine. Because the FCC had "no opportunity to pass" on this issue before this lawsuit was filed, petitioners "failed to preserve this argument," and the Court "cannot consider it." *Worldcall*, 907 F.3d at 823; *see also Gray Television, Inc. v. FCC*, 130 F.4th 1201, 1213-14 (11th Cir. 2025) (holding that 47 U.S.C. § 405(a) barred judicial review of an argument that had not been raised before the FCC).[4]

Because the FCC was given no opportunity to address the question of whether sections 254(c)(3) and (h)(2) violate the nondelegation doctrine, section 405 precludes petitioners from raising that issue on remand in this case. Accordingly, supplemental briefing on the issue would be pointless.[5]

---

[4] Because petitioners did not raise the argument before the Commission, there is no way of knowing whether it would have been futile to do so. In any event, Congress did not provide for a "futility" exception—or any other exception—to section 405's exhaustion requirement. *See Fones4All Corp. v. FCC*, 550 F.3d 811, 818 (9th Cir. 2008); *Fones4All Corp. v. FCC*, 561 F.3d 1031, 1033 (9th Cir. 2009); *see also Gray Television*, 130 F.4th at 1214 (expressing "doubt" that a court "can engraft a judge-made [futility] exception onto" section 405, which contains no such exception). And as the Supreme Court has repeatedly held in recent years, courts should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *see also Ross v. Blake*, 578 U.S. 632, 640 (2016); *Porter v. Nussle*, 534 U.S. 516, 523-32 (2002).

[5] At all events, this Court should not order "simultaneous" supplemental briefing. Mot. 8. Because petitioners have not previously presented arguments regarding the

# CONCLUSION

For the foregoing reasons, the motion for supplemental briefing on remand should be denied.

Respectfully submitted,

D. Adam Candeub
General Counsel

/s/Caroline W. Tan

| | |
|---|---|
| Courtney L. Dixon | Bradley Craigmyle |
| Caroline W. Tan | Deputy General Counsel |
| Attorneys, Appellate Staff | |
| Civil Division, Room 7236 | |
| U.S. Department of Justice | Jacob M. Lewis |
| Washington, DC  20530 | Associate General Counsel |

/s/James M. Carr

James M. Carr
Counsel

Federal Communications Commission
Washington, DC  20554
(202) 418-1740

July 17, 2025

---

constitutionality of sections 254(c)(3) and (h)(2), respondents and their supporting intervenors have had no opportunity to review petitioners' arguments.  If the Court concludes that supplemental briefing is warranted, it should adopt a briefing schedule that permits respondents and their supporting intervenors to file supplemental briefs 30 days after petitioners' supplemental brief is filed.  This will ensure that respondents and their supporting intervenors have a fair and adequate opportunity to assess and address petitioners' arguments.

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>2,349</u> words, *or*

    ☐ this document uses a monospaced typeface and contains _ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

                                                */s/ James M. Carr*

                                                James M. Carr
                                                Counsel

                                                Federal Communications Commission
                                                Washington, D.C.  20554
                                                (202) 418-1740

# CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on July 17, 2025, I filed the foregoing Respondents' Opposition To Petitioners' Motion for Supplemental Briefing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740