# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| CONSUMERS' RESEARCH; CAUSE BASED COMMERCE, INCORPORATED; KERSTEN CONWAY; SUZANNE BETTAC; ROBERT KULL; KWANG JA KERBY; TOM KIRBY; JOSEPH BAYLY; JEREMY ROTH; DEANNA ROTH; LYNN GIBBS; PAUL GIBBS,<br><br>Petitioners,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES OF AMERICA,<br><br>Respondents. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 22-60008 |

**PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION FOR SUPPLEMENTAL BRIEFING ON REMAND FROM THE SUPREME COURT**

1

**REPLY**

The government claims Justices Gorsuch, Thomas, and Alito were all "mistaken[]" when they said the constitutionality of 47 U.S.C. §§ 254(c)(3) and (h)(2) remains for resolution on remand. FCC Opp. 5. Presumably the government thinks the six Justices in the majority were likewise mistaken for flagging those same provisions and agreeing to remand this case for further proceedings. Despite the government's views—further addressed below—this issue does remain for remand. Nor does the government ever explain what harm could result from allowing supplemental briefing. The *en banc* Court should grant Petitioners' motion.[1]

***This Issue Was Preserved at This Court.*** The government suggests this issue was not previously raised before this Court. As already explained, this issue was addressed in the parties' prior briefs, albeit not in extensive detail. *See* Pets.' Motion for Supp. Br. 8 n.2 (providing cites); *see also* FCC En Banc Br. 34 n.13 & 40–42 (5th Cir. Aug. 30, 2023). After nine Justices went out of their way to flag these provisions as worthy of separate consideration, they clearly warrant more extensive treatment, which is why supplemental briefing is appropriate. And because this case

---

[1] Intervenors claim Petitioners "mistakenly address their motion for supplemental briefing to the *en banc* Court." Intervenors Opp. 3. As Fifth Circuit practitioners are aware, however, a case decided *en banc* will return to the *en banc* Court upon remand from the Supreme Court. *See, e.g.*, *Feds for Med. Freedom v. Biden*, No. 22-40043, 2024 WL 4299029 (5th Cir. Sept. 26, 2024) (*en banc*) (on remand from Supreme Court); *Collins v. Yellen*, 27 F.4th 1068 (5th Cir. 2022) (*en banc*) (same).

originated via a direct-to-circuit-court petition, this Court—rather than a district court—is the proper venue for such briefing.[2]

***The Government's "Waiver" Argument Is Illogical.*** The government next claims that because Petitioners' challenge is to the mechanisms for *raising* revenue for the Universal Service Fund, Petitioners have "waived" any argument about §§ 254(c)(3) and (h)(2), which the government claims are actually about *spending* Universal Service Fund revenue. FCC Opp. 3.

That argument fails because these provisions *are* about raising revenue. Section 254(d) states that carriers must contribute to the "sufficient mechanisms established by the [FCC] to preserve and advance universal service" (i.e., the FCC must raise money for them), and then §§ 254(c)(3) and (h)(2) authorize the FCC to "designate additional services for such support mechanisms," including "access to advanced telecommunications and information services."

Sections 254(c)(3) and (h)(2) thus directly allow the FCC to raise extra revenue, putting those provisions squarely within Petitioners' challenge. As the

---

[2] The government claims Petitioners' Supreme Court briefing did not address §§ 254(c)(3) and (h)(2). But Petitioners' brief *did* cite § 254(c)(3) and explained how it means "[t]he FCC can ignore" limits when it comes to "schools, libraries, and health care providers." Br. for Resp. 55. Anyway, this Court's *en banc* opinion did not address those provisions. At the Supreme Court, the burden of preservation fell on the government (i.e., the petitioner at that Court), which abandoned its prior theory that §§ 254(c)(3) and (h) somehow imposed meaningful *limits* on the FCC. The government cannot use its own abandonment of those provisions at the Supreme Court to preclude Petitioners from continuing to raise them on remand.

3

Supreme Court explained, the FCC decides the scope of such programs, and "the FCC cannot raise less than is adequate or necessary to finance th[ose] universal-service programs." *FCC v. Consumers' Research*, No. 24-354, 2025 WL 1773630, at *12 (U.S. June 27, 2025). That money will eventually be disbursed, but that does not magically preclude a challenge to the *front-end* fundraising.

To put a finer point on it: if §§ 254(c)(3) and (h)(2) do not implicate revenue-raising, then the FCC is statutorily barred from raising *any* funds for *any* §§ 254(c)(3) and (h)(2) programs. An interesting argument from the government.

***This Issue Was Raised in Petitioners' Comments.*** The government next contends that a challenge to programs funded via §§ 254(c)(3) and (h)(2) was not properly preserved in Petitioners' agency comments. That is wrong, as explained below. But first a threshold point: this argument is rich coming from the same agency that has flatly ignored *all thirty-one* comments Petitioners have filed in the Universal Service Fund quarterly proceedings over the last four years. The FCC has even criticized Petitioners for daring to submit comments at all, calling them "uninvited" and "unsolicited." Br. for Resp. 28, *Consumers' Rsch. v. FCC*, No. 22-13315 (11th Cir. Dec. 22, 2022). But now the government insists the notice-and-comment process is sacred and claims the FCC was deprived of a chance to consider this issue. Talk about chutzpah.

In any event, Petitioners' comments *did* fairly raise this issue. For example, Petitioners' comment filed for this proceeding in December 2021:

[1] expressly described the services at issue in §§ 254(c)(3) and (h)(2): "advanced telecommunications and information services,' particularly highspeed internet access, for schools (as well as for libraries and rural health care providers)," JA7[3];

[2] stated those services are part of the "Schools and Libraries program, and a Rural Health Care program," JA8;

[3] cited the extensive regulations related to those programs, *id.*, and;

[4] in the very next sentence, said: "***Congress imposed no formula or limitation on how much money the Commission can raise through these mechanisms***," *id.* (emphases added).

That is far more than required to preserve the argument. A party "need only confirm that the government had notice of the challenge during the public comment period and a chance to consider in substance, if not in form, the same objection now raised in court." *Ohio v. EPA*, 603 U.S. 279, 296 (2024) (cleaned up). And remember, the government cited §§ 254(c)(3) and (h) in its own briefing before this Court—the government has been on notice since the earliest days of this challenge.[4]

---

[3] JA__ refers to the Joint Appendix filed in this case on July 15, 2022.

[4] Regardless, the government forfeited any exhaustion argument by not raising it when it addressed these provisions in its prior briefing. Administrative exhaustion is

5

***At the Very Least, This Court Should Briefly Hold This Case.*** Even if the Court has a doubt about preservation (and it shouldn't), there is an easy solution: order supplemental briefing, and by the time it is finished and this Court considers it, there will be a new related case before this Court that undoubtedly presents this issue and, if necessary, could be consolidated with this case.

The FCC sets a new contribution rate every quarter, and thus every three months Petitioners lodge new agency comments and file a new petition with this Court. The agency proceedings for the next quarter will preserve this issue even to the government's satisfaction, and Petitioners' next suit will be filed in this Court in late September or early October 2025. It will join a long list of USF-related petitions that have been filed and related to this lead case.

The Court will undoubtedly have to consider this exact issue anyway—and very soon, too. As the *en banc* Court explained earlier in these proceedings: "if we do not decide the constitutional questions presented in this case, we will have to decide them in a [soon-to-be] pending challenge" anyway, so the *en banc* Court might as well decide it now. *Consumers' Rsch. v. FCC*, 109 F.4th 743, 756 (5th Cir. 2024) (*en banc*). The same holds true here.

---

strongly presumed to be non-jurisdictional. *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–23 (2023).

## CONCLUSION

The *en banc* Court should order simultaneous supplemental briefs on whether 47 U.S.C. §§ 254(c)(3) and (h)(2) violate the nondelegation doctrine.

July 20, 2025                                  Respectfully submitted,

/s/ R. Trent McCotter
R. Trent McCotter
  *Counsel of Record*
BOYDEN GRAY PLLC
800 Connecticut Ave. NW, Suite 900
Washington, DC 20006
202-706-5488
tmccotter@boydengray.com
*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fifth Circuit Rule 27.4 and Federal Rule of Appellate Procedure 27(d)(2) because it contains 1266 words, excluding the portions exempted by Rule 27(a)(2)(B). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman and 14-point font.

Respectfully submitted,

/s/ R. Trent McCotter

*Counsel for Petitioners*

# CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served today with a copy of this document via the Court's CM/ECF. All parties in this case are represented by counsel consenting to electronic service.

Respectfully submitted,

/s/ R. Trent McCotter

*Counsel for Petitioners*